**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSICA DECOURSEY and GRACE SIT, on behalf of themselves and a class of all others similarly situated,<br><br>                                     Plaintiffs,<br>v.<br><br>MURAD, LLC,<br><br>                                  Defendant. | Civil Action No.  3:22-CV-0353 (GTS/ML)<br><br>**CLASS ACTION COMPLAINT**<br>**and DEMAND FOR JURY TRIAL** |

Plaintiffs Jessica DeCoursey and Grace Sit ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, bring this class action lawsuit against Defendant Murad, LLC ("Murad" or "Defendant") based upon personal knowledge as to themselves, the investigation of their counsel, and on information and belief as to all other matters.

## INTRODUCTION

1.    This is a class action lawsuit brought by Plaintiffs on behalf of consumers who purchased certain Murad cosmetic products that are intended to be used in the eye area but are unsafe for their intended use (the "Affected Murad Products"). The Affected Murad Products include: Retinol Youth Eye Serum, Retinol Youth Renewal Night Cream, Retinol Youth Renewal Serum, Nutrient-Charged Water Gel, Clarifying Water Gel, and Hydrating Toner.[1]

2.    Defendant designs, formulates, manufactures, markets, advertises, distributes, and sells the Affected Murad Products to consumers throughout the United States.

3.     The Affected Murad Products contain color additives that are not safe for use in cosmetic products intended to be used in the eye area.  The color additives in the Affected Murad

---

[1] Plaintiffs reserve the right to amend this list if further investigation and/or discovery reveals that the list should be amended.

Products include FD&C Red No. 4, D&C Red No. 33, and D&C Orange No. 4 (the "Unsafe Color Additives").

4.      In fact, the United States Food and Drug Administration ("FDA") prohibits the Unsafe Color Additives in cosmetics intended to be used in the eye area unless specifically authorized for such use through regulations.[2]

5.      Despite this, Murad directs consumers to use the Affected Murad Products in their eye area.[3]  For example, the below image appears on Murad's product webpage for the Retinol Youth Renewal Eye Serum.



6.      As a direct and intended result of Defendant's advertising, marketing, and instructional videos consumers, Plaintiffs and Class members purchased the Affected Murad Products with the understanding that the products could be in the eye area, as advertised.

7.      Defendant knew or should have known of the dangers of using the Affected Murad Products in the eye area, and has undertaken a deliberate and willful pattern of conduct (including

---

[2] 21 CFR § 74.2304 (FD&C Red No. 4); 21 CFR § 74.2333 (D&C Red No. 33); 21 CFR § 74.2254 (D&C Orange No. 4); 21 U.S.C. 379e(a)(1)(A).
[3] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-eye-serum/ (last visited April 13, 2022).

taking active measures) aimed at deceiving consumers, including Plaintiffs, to believe that the Affected Murad Products are safe to use for their intended purpose.

8.      Defendant failed to disclose to Plaintiffs and Class members that the Affected Murad Products are unsafe for use in the eye area and that they should not be used in the eye area. Defendant could have placed a prominent and conspicuous safety warning alerting consumers that the products should not be used in the eye area, but Defendant failed to do so.

9.      Plaintiffs and Class members purchased the Affected Murad Products with the expectation that the products were safe for their intended purpose. Because Defendant sold adulterated products to Plaintiffs and Class members, Plaintiffs and Class members were deprived of the benefit of their bargain.

10.     At all relevant times, Defendant knew, or should have known, that the Affected Murad Products were unsafe for their intended purpose.

11.     Plaintiffs and Class members were unaware that the Affected Murad Products were unsafe for use in the eye area at the time they purchased the products. Had Plaintiffs and Class members known the Affected Murad Products were unfit for their intended purpose, they would not have purchased Affected Murad Products or would have paid substantially less for them.

12.     Plaintiffs and all putative Class members purchased an Affected Murad Product which posed a safety risk. Plaintiffs and each of the Class members have been damaged and suffered an injury in fact caused by Defendant's false, unfair, deceptive, and misleading practices, as set forth herein.  Plaintiffs seek monetary relief in the form of damages and/or disgorgement of profits unjustly earned by Defendant.

13.     Plaintiffs also seek injunctive relief including, but not limited to, the removal of the Unsafe Color Additives from the Affected Murad Products, or in the alternative, the addition of a

3

plain and conspicuous warning as to the dangers posed by use of the product in the eye area, and ceasing of all advertisements and marketing materials instructing consumers to use the Affected Murad Products in the eye area.

14.     Plaintiffs seek monetary, declaratory, and injunctive relief against Defendant on behalf of themselves and other similarly-situated consumers by asserting claims for (i) breach of implied warranty; (ii) violations of New York General Business Law § 349; (iii) violations of New York General Business Law § 350; (iv) violations of Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.010 *et seq*.; (v) negligence – failure to warn; and (vi) unjust enrichment.

## PARTIES

15.     Plaintiff Jessica DeCoursey is a resident and citizen of the state of New York. In November of 2021, Plaintiff DeCoursey purchased Murad Retinol Youth Renewal Eye Serum at an Ulta retail store located in Ithaca, New York. After using the product one time, Plaintiff DeCoursey's eyes became red and irritated, developed discharge, and began to swell and tear. Immediately after using the product, she called Defendant to inquire about the ingredients.  She was unable to reach an employee to speak to.[4]  Plaintiff DeCoursey also purchased Retinol Youth Renewal Serum in June 2021 from an Ulta retail store located in Dickson City, Pennsylvania, and Retinol Youth Renewal Serum and Retinol Youth Renewal Night Cream in November 2021 from a CosmoProf retail store located in Scranton, Pennsylvania.  The Retinol Youth Renewal serum made her eyes water. The Affected Murad Products purchased by Plaintiff DeCoursey should not have been sold in the manner in which they were. When purchasing the Affected Murad Products, Plaintiff DeCoursey reviewed the accompanying labels and disclosures.  Plaintiff DeCoursey relied on these representations and warranties in deciding to purchase the Affected Murad

---

[4] Plaintiff DeCoursey does not seek relief for the personal bodily injury resulting from the use of Affected Murad Products.

Products.  Nowhere on the labels did Defendant disclose that the products should not be used in the eye area.  Plaintiff DeCoursey would not have purchased the Affected Murad Products had she known that the products contained unsafe color additives.

16.     Plaintiff Grace Sit is a resident and citizen of the state of Missouri. In or around 2020, Ms. Sit purchased Retinol Youth Renewal Night Cream from a Macy's retail store located in St. Peters, Missouri.  In the summer of 2021, Plaintiff Sit also purchased Clarifying Oil-Free Water Gel from a Walmart retail store located in either St. Peters or O'Fallon, Missouri. The Affected Murad Products purchased by Ms. Sit should not have been sold in the manner in which they were. When purchasing the Affected Murad Products, Plaintiff Sit reviewed the accompanying labels and disclosures.  Plaintiff Sit relied on these representations and warranties in deciding to purchase the Affected Murad Products.  Nowhere on the labels did Defendant disclose that the products should not be used in the eye area.  Ms. Sit would not have purchased the Affected Murad Products had she known that the products contained unsafe color additives.

17.     Murad, LLC is a Delaware company with its principal place of business located at 2121 Park Place, First Floor, El Segundo, CA 90245.  At all relevant times hereto, Defendant was engaged in manufacturing, marketing, distributing, and advertising Affected Murad Products throughout the United States. Defendant created and/or authorized the advertising and labeling of the Affected Murad Products.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from the Defendant.

19.     This Court has personal jurisdiction over Defendant because Defendant sold the Affected Murad Products to consumers in New York, including to Plaintiff DeCoursey. Defendant derives substantial revenue from sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Plaintiff DeCoursey's purchase of an Affected Murad Product.

## FACTUAL ALLEGATIONS

### A.     The Cosmetic Industry

21.     Skincare is one of the most profitable cosmetic product categories, as its revenue is projected to generate roughly 177 billion U.S. dollars in 2025.[5]

22.     Within the cosmetic industry in the United States, eye care products make up the most popular segment.



**Eye cosmetics slightly more popular in the U.S.**
Cosmetic sales in the U.S. across different segments in 2020 (in million U.S. dollars)

---

[5] *Cosmetics industry - Statistics & Facts*, STATISTA, https://www.statista.com/topics/3137/cosmetics-industry/#topicHeader__wrapper (last visited April 13, 2022).

**B.**   **The Affected Murad Products Contain Unsafe Color Additives**

23.     Each of the Affected Murad Products contain one or more of the Unsafe Color Additives.

| Product Name | Average Price | Unsafe Color Additive |
|---|---|---|
| Retinol Youth Renewal Eye Serum | $87.00 | FD&C Red No.4 |
| Retinol Youth Renewal Night Cream | $84.00 | FD&C Red No.4 |
| Retinol Youth Renewal Serum | $89.00 | FD&C Red No.4 |
| Nutrient-Charged Water Gel | $63.00 | FD&C Red No.4, D&C Red No. 33 |
| Clarifying Water Gel | $46.00 | D&C Red No. 33 |
| Hydrating Toner | $37.00 | FD&C Red No.4, D&C Orange No.4 |

24.     The Unsafe Color Additives are not safe for use in the eye area.  For example, the DC Fine Chemicals' Safety Data Sheet for FD&C Red No. 4 powder notes that first aid measures are necessary if the ingredient contacts the eye.[6]  The Safety Data Sheet calls for "removing the contact lenses, if present and if it is easy to do. Wash eyes with plenty of clean and cool water for at least 10 minutes while pulling the eyelids up, and seek medical assistance. Don't let the person [rub] the affected eye."[7]  In addition, 2015 study noted Red No. 4 may disrupt endocrine activity.[8]

25.     Similarly, Spectra Colors Corporation's Safety Data Sheet for D&C Red No. 33 notes that the ingredient poses several hazards, including if inhaled, if swallowed, or if exposed to

---

[6] *Safety Data Sheet – FD&C Red 4 Powder*, DC FINE CHEMICALS, https://www.dcfinechemicals.com/catalogo/Hojas%20de%20seguridad%20(EN)/117320-SDS-EN.pdf
[7] *Id.*
[8] *FD&C Red No. 4 (CI 14700)*, EWG – EWG'S SKIN DEEP, https://www.ewg.org/skindeep/ingredients/702429-FD&C_Red_No-FDC_Red_No_4_CI_14700-FDC_Red_No_4_CI_14700-FDC_Red_No_4_CI_14700/ (last visited April 13, 2022).

the eyes.[9]   When exposed to the eyes, Red No. 33 can cause irritation, and should be rinsed cautiously with water for several minutes, after removing contact lenses if present.[10]   If eye irritation persists, medical attention should be sought out.[11]

26.     Spectra Colors Corporation's Safety Data Sheet for D&C Orange No. 4 notes that the ingredient poses several hazards, including if inhaled, if swallowed, or if exposed to the eyes.[12] When exposed to the eyes, the D&C Orange No. 4 may cause irritation, and should be rinsed cautiously with water for several minutes, after removing contact lenses if present.[13]   If eye irritation persists, medical attention should be sought out.[14]

27.     The risks associated with using the Unsafe Color Additives in the eye area is well-documented. The FDA is likewise aware of the risks of harm and, for these reasons, the FDA prohibits the use of Unsafe Color Additives in cosmetics intended to be used in the eye area.[15]

28.     Intended use is described as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human body...for cleansing, beautifying, promoting attractiveness, or altering the appearance."[16]

29.     For cosmetics intended to be in the eye area, color additives may not be used unless the regulation for the color additive specifically permits its use for that purpose.[17]   For example,

---

[9] *Safety Data Sheet - D & C RED 33*, SPECTRA COLORS CORP., https://spectracolors.com/wp-content/uploads/2017/04/4.FD_.033000-SDS.pdf (last visited April 13, 2022).
[10] *Id.*
[11] *Id.*
[12] *Safety Data Sheet – D & C ORANGE 4*, SPECTRA COLORS CORP., https://spectracolors.com/wp-content/uploads/2017/04/2.FD_.004000-SDS.pdf (last visited April 13, 2022).
[13] *Id.*
[14] *Id.*
[15] 21 CFR § 74.2304 (FD&C Red No. 4); 21 CFR § 74.2333 (D&C Red No. 33); 21 CFR § 74.2254 (D&C Orange No. 4); 21 U.S.C. 379e(a)(1)(A); *Color Additives Permitted for Use in Cosmetics*, U.S. FOOD & DRUG ADMINISTRATION,  https://www.fda.gov/cosmetics/cosmetic-ingredient-names/color-additives-permitted-use-cosmetics (last accessed April 13, 2022).
[16] FD&C Act, sec. 201(i).
[17] 21 CFR 70.5(a).

21 CFR 74.2101(c) specifically notes that "FD&C Blue No. 1 may be safely used for coloring cosmetics generally, including cosmetics intended for use in the area of the eye . . . ."

30.     The FDA can also impose conditions on the use of color additives to be used in the eye area, as 21 CFR 74.2340(b) demonstrates: "FD&C Red No. 40 may be safely used in color cosmetics generally, except that only FD&C Red No. 40 and FD&C Red No. 40 Aluminum Lake may be safely used in coloring cosmetics intended for use in the area of the eye . . . subject to the following restrictions: (b)(2) The color additive shall not be exposed to oxidizing or reducing agents that may affect the integrity of the color additives . . . ."

31.     The FDA published a table to serve as a "quick reference" in determining which color additives may be used in different types of cosmetics.[18]  For each of the Unsafe Color Additives, the FDA notes that it is not permitted to be used in the eye area.[19]

32.     As such, the Affected Murad Products are adulterated because they fail to meet color additive requirements[20] and labels of products containing color additives must be labeled with sufficient information to assure their safe use.[21]  Where the product is subject to limitations, such as not being safe for use in the area of the eye, it must have a plain and conspicuous statement such as "Do not use in the area of the eye."[22]

33.     Defendant does not include such a warning on the Affected Murad Product labels or in advertising and marketing materials.

---

[18] *Color Additives Permitted for Use in Cosmetics*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/cosmetics/cosmetic-ingredient-names/color-additives-permitted-use-cosmetics (last accessed April 13, 2022).
[19] *Id.*
[20] 21 USC 361(e); *see* FD&C Act, sec. 601(e)
[21] 21 CFR 70.25(a).
[22] 21 CFR 70.25(c).

C.   **The Affected Murad Products Are Intended To Be Used In The Eye Area**

34.   The normal, expected, and intended use for the Affected Murad Products include use in the eye area.

35.   The "eye area" refers to "the area enclosed within the circumference of the supra-orbital ridge and the infra-orbital ridge, including the eyebrow, the skin below the eyebrow, the eyelids and the eye lashes, and conjunctival sac of the eye, the eyeball, and the soft areolar tissue that lies within the perimeter of the infra-orbital ridge."[23]

36.   The supra- and infra-orbital ridges are also known as the supra- and infra-orbital margins.   In basic terms, this region describes the area between the eyebrow and cheek bone, including everything between.   The region between the supra- and infra-orbital margins is visualized in the space between 9 and 25 in the below graphic:



---

[23] 21 CFR 70.3(s).

37.     However, the Affected Products are not unsafe for use in the eye area.

38.     As described in more detail below, Defendant instructs users to use each of the Affected Murad Products in the eye area.

39.     Competitor companies with products similar to the Affected Murad Products either (1) do not contain the Unsafe Color Additives; or (2) do not direct users of the products to apply the products in the eyes area and warn against using the products in the eye area.

40.     For example, Arcona instructs users of its Youth Serum product to apply the product directly to the eye area,[24] however, the Arcona Youth Serum does not include any of the Unsafe Color Additives.[25]

877-272-6620

**ARCONA**®

LOS ANGELES

DIRECTIONS

Use daily in the AM on clean skin before daily hydrator: Shake serum and pump once into palm. Apply using quick upward, outward strokes to face, eye area, neck and décolleté.

---

[24] ARCONA, https://www.arcona.com/product/youth-serum.html (last visited April 13, 2022).
[25] *Id.*

41.     Similarly, Dr. Sam's instructs users of its Flawless Moisturizer product to "apply to eye area and neck (skin is skin!)[,]"[26] but Dr. Sam's Flawless Moisturizer does not include any of the Unsafe Color Additives.[27]



---

[26] DR. SAM'S, https://us.drsambunting.com/products/flawless-moisturiser (last visited April 13, 2022).
[27] *Id.*

42.    Lancome's Rose Sorbet Cryo-Mask product does contain FD&C Red No. 4 and D&C Red No. 33,[28] but contrary to Murad, Lancome instructs users to avoid the eye area and lip contours.[29] The warning also appears on the product itself.



**D.    Murad Directs Consumers To Use The Affected Murad Products In The Eye Area**

43.    Each of the Affected Murad Products contain Unsafe Color Additives, however, Murad directs customers to use the Affected Murad Products in the eye area.

---

[28] LANCOME, https://www.lancome-usa.com/skincare/rose-sorbet-cryo-mask/LAN385.html#tab=Tabs_18x8sldcn56_control_0 (last visited April 13, 2022).
[29] *Id.*

44.     For example, Murad's Hydrating Toner instructs users to "hold bottle 8-10 inches away from face, close [their] eyes & mist evenly onto skin."[30]



45.     Defendant explicitly states that its Retinol Youth Renewal Eye Serum is intended for use in the eye area and provides photographic instruction to use it in the eye area.[31]

---

[30] MURAD, https://www.murad.com/product/hydrating-toner/ (last visited April 13, 2022).
[31] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-eye-serum/ (last visited April 13, 2022).

46.     On its website, Defendant instructs consumers to "gently pat Retinol Youth Renewal Eye Serum around under-eyes & lids."[32]



47.     Similarly, Murad's Retinol Youth Renewal Serum is intended to be used in the eye area.  Murad's promotional video for the product shows the product applied to the eye area.[33]



93% saw fewer lines and wrinkles

---

[32] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-eye-serum/ (last visited April 13, 2022).
[33] *Murad Resurgence Retinol Youth Renewal Serum - Anti-Aging Serum for Lines and Wrinkles - Retinol Serum for Face and Neck - Youth Serum for Smoother Skin*, AMAZON, https://www.amazon.com/Murad-Retinol-Youth-Renewal-Serum/dp/B01K629LDI (last visited April 13, 2022).

48. Defendant instructs consumers to apply the Murad Retinol Youth Renewal Night Cream evenly over face, and Murad's product page includes an instructional video showing the Retinol Youth Renewal Night Cream being applied in the eye area.[34]



49. Murad's Nutrient-Charged Water Gel is similarly intended to be used in the eye area. Murad's product instructions state that the product should be massaged over the face,[35] and Murad-sponsored promotional videos Murad specifically show the product's use in the eye area.[36]



---

[34] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-night-cream/ (last visited April 13, 2022).

[35] MURAD, https://www.murad.com/product/nutrient-charged-water-gel/ (last visited April 13, 2022).

[36] FACEBOOK, https://www.facebook.com/watch/?v=10155279992937124 (last visited April 13, 2022).

16

50.     Finally, Defendant instructs consumers to massage the Clarifying Water Gel evenly over the face,[37] and its accompanying promotional video demonstrates the product being "dabbed" on the eye area[38]



### E.    The Color Additives Are Not Key Ingredients In The Affected Products

51.     Murad's use of the Unsafe Color Additives is purely cosmetic.[39]

52.     For example, the key active ingredients in Defendant's Retinol Youth Renewal Eye Serum product are a Retinol Tri-Active Technology ("a fast acting retinoid, a time-released retinol and a retinol booster"), cotton wool grass extract, and Marine Kelp Complex.[40]   These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[41]

---

[37] MURAD, https://www.murad.com/product/clarifying-oil-free-water-gel-moisturizer/ (last visited April 13, 2022).
[38] Id.
[39] Color additives merely "impart color to a food, drug, or cosmetic or to the human body." *Color Additives History*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/industry/color-additives/color-additives-history (last visited April 13, 2022);  Color additives can also impart colors to medical devices. *FDA Regulation of Color Additives in Drug Products*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/media/122829/download, p. 3 (last visited April 13, 2022).
[40] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-eye-serum/ (last visited April 13, 2022).
[41] Id.

53.     The key active ingredients in Defendant's Retinol Youth Renewal Serum are Retinol Tri-Active Technology, Swertia Flower Extract, and Hyaluronic acid.[42] These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[43]

54.     The key active ingredients in Defendant's Retinol Youth Renewal Night Cream are Retinol Tri-Active Technology, Niacinamide, and Picolinamide.[44]  These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[45]

55.     The key active ingredients in Defendant's Hydrating Toner are Lecithin and Grape Seed Extract, Peach and Cucumber Fruit Extracts, and osmolytes.[46] These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[47]

56.     The key active ingredients in Defendant's Nutrient-Charged Water Gel are Vitamins B3, B5, B6, B9, and E, Silicon, Iron, Zinc, Copper and Magnesium, Oligopeptide-1, Oligopeptide-2, Polypeptide-1, Polypeptide-9 and Polypeptide-11.[48]  These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[49]

57.     The key active ingredients in Defendant's Clarifying Water Gel are Salicylic Acid, Sustained Release Hyaluronic Acid, Korean Red Pine Extract, and Ginger Root Extract.[50] These ingredients are listed in the "Ingredient Spotlight" on Defendant's website.[51]

---

[42] MURAD, https://www.murad.com/product/retinol-youth-renewal-serum/ (last visited April 13, 2022).
[43] Id.
[44] MURAD, https://www.murad.com/product/new-retinol-youth-renewal-night-cream/ (last visited April 13, 2022).
[45] Id.
[46] MURAD, https://www.murad.com/product/hydrating-toner/ (last visited April 13, 2022).
[47] Id.
[48] MURAD, https://www.murad.com/product/nutrient-charged-water-gel/ (last visited April 13, 2022).
[49] Id.
[50] MURAD, https://www.murad.com/product/clarifying-oil-free-water-gel-moisturizer/ (last visited April 13, 2022).
[51] Id.

58.     The Unsafe Color Additives are not required ingredients in the Affected Murad Products.  Murad's competitors manufacture and sell products that do not contain the Unsafe Color Additives. *See supra*, § C.

59.     In effect, Murad could have produced the Affected Murad Products without the Unsafe Color Additives.

60.     Alternatively, Defendant could have included a conspicuous warning on the Affected Murad Product labels and in advertising materials warning customers that the products are not safe for use in the eye area.

61.     Instead, Murad instructed users to use the Affected Murad Products in the eye area.

62.     Plaintiffs and each of the Class members have been damaged and suffered an injury in fact caused by Defendant's false, unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and injunctive relief.  As a result, Defendant's actions violate both consumer fraud statutes and, separately, FDA regulations.

## CLASS ACTION ALLEGATIONS

63.     Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Murad Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

64.     Plaintiff DeCoursey brings this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Murad Products in the state of New York for personal/household use within any applicable limitations (the "New York Subclass").

65.     Plaintiff Sit brings this action individually and on behalf of the following Missouri subclass:

All persons who purchased one or more of Defendant's Affected Murad Products in the state of Missouri for personal/household use within any applicable limitations (the "Missouri Subclass").

66.     Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of the Affected Murad Products.

67.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

68.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class members. The common and legal questions include, but are not limited to, the following:

    a.      Whether the Affected Murad Products contain Unsafe Color Additives;

    b.      Whether the Unsafe Color Additives are key ingredients of the Affected Murad Products;

    c.      Whether the Affected Murad Products are unsafe for their intended use;

d.      Whether the Affected Murad Products are unsafe for use in the eye area;

e.      Whether the Affected Murad Products are intended to be used in the eye area;

f.      Whether Murad directed its customers to use the Affected Murad Products in the eye area;

g.      Whether the Affected Murad Products contained a warning to avoid use in the eye area;

h.      Whether Murad should be required to include a warning to avoid use in the eye area on the Affected Murad Products;

i.      Whether Defendant violated the state consumer protection statutes alleged herein;

j.      Whether Defendant breached its implied warranties;

k.      Whether Defendant was negligent;

l.      Whether Defendant was unjustly enriched; and

m.      The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

69.     Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class members, purchased the Affected Murad Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class members.

70.     Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer

21

litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the members of the Class.

71.     Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

72.     Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF IMPLIED WARRANTY**
**(On behalf of the Nationwide Class)**

73.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

74.     As described above, Plaintiffs have standing to pursue this claim because Plaintiffs suffered injury-in-fact and have lost money or property as a result of Defendant's conduct.

75.     Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Affected Murad Products. Defendant knew or had reason to know of the specific use for which Affected Murad Products were purchased, including that the Affected Murad Products were marketed, advertised, and sold to be used in the eye area.

76.     By placing the Affected Murad Products into the stream of commerce, Defendant provided Plaintiffs and Nationwide Class members with implied warranties that the Affected Murad Products were merchantable and fit for the ordinary purposes for which they were sold.

77.     However, the Affected Murad Products are not fit for their ordinary purpose of being used in the eye area because, *inter alia*, the Affected Murad Products contain Unsafe Color Additives causing them to become dangerous and unsuitable for their intended use and Defendant directs consumers to use the Affected Murad Products in the eye area.

78.     As such, the Affected Murad Products cannot safely be used for their intended purpose, and thus constitute a breach of the implied warranty of merchantability.

79.     These problems are caused by Defendant's failure to adequately warn Plaintiffs and consumers that the Affected Murad Products are not safe for use in the eye area.

80.     Plaintiffs and Nationwide Class members were unaware that the products were

unsafe for use in the eye area at the time they purchased the Affected Murad Products.

81.     Defendant impliedly warranted that Affected Murad Products were of merchantable quality and fit for such use. These implied warranties included, among other things: (i) a warranty that Affected Murad Products manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for use near the eye area; and (ii) a warranty that the Affected Murad Products were fit for their intended use.

82.     Contrary to the applicable implied warranties, the Affected Murad Products, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiff and Nationwide Class members with a safe cosmetic product. Instead, the Affected Murad Products were unsafe for their intended use.

83.     Defendant's actions, as complained of herein, breached the implied warranties that the Affected Murad Products were of merchantable quality and fit for such use.

84.     Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and the Nationwide Class, not third-party retailers, resellers or distributors who sold the products. Moreover, Defendant exercises substantial control over which outlets can carry and sell its products, which are the same places that Plaintiffs and Nationwide Class members purchased the Affected Murad Products. In addition, Defendant's warranties are in no way designed to apply to the third-party retailers, resellers or distributors who purchase the Affected Murad Products in bulk and then sell them on an individual basis to consumers. Individual consumers are the ones who ultimately review the labels prior to making any purchasing decisions. Accordingly, these warranties are specifically designed to benefit the individual consumers who purchase the Affected Murad Products.

85.     Plaintiffs and Nationwide Class members sustained damages as a direct and

24

proximate result of Defendant's breaches in that they paid a premium for the Affected Murad Products that they would not have otherwise paid. Plaintiffs and the Nationwide Class also did not receive the value of the products they paid for—the Affected Murad Products are worthless or worth far less than Defendant represents.

86.     Defendant's conduct described in this complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia.

87.     Plaintiffs and the Nationwide Class have sustained, are sustaining, and will sustain damages if Defendant continues to engage in such deceptive, unfair, and unreasonable conduct.

88.     As a result of the breach of the implied warranty of merchantability, Plaintiffs and Nationwide Class Members are entitled to legal and equitable relief, including injunctive relief, damages, attorneys' fees, litigation expenses and costs rescission, and/or other relief as deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

89.     On February 9, 2022 and April 6, 2022, prior to filing this action, Defendant was served with pre-suit notice letters sent on behalf of Plaintiffs Sit and DeCoursey, respectively.

### COUNT II

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349, *ET SEQ*.**
**(On behalf of the New York Subclass)**

90.     Plaintiff DeCoursey hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

91.     Plaintiff DeCoursey brings this count on behalf of herself and all members of the New York Subclass.

92.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

93.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

94.     Plaintiff DeCoursey and members of the New York Subclass are consumers who purchased the Affected Murad Products from Defendant for their personal use.

95.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation: (1) failing to warn or disclose to purchasers of the Affected Murad Products that the Affected Murad Products are not safe to use in the eye area; (2) providing instructions to use the Affected Murad Products in the eye area; (3) utilizing celebrities and influencers to advertise products and instruct consumers to use the Affected Murad Products in the eye area; (4) advertising or marketing the Affected Murad Products while knowing, or in the direct position to know, that the Affected Murad Products should not have been sold in the manner in which they are; and (5) representing that the Affected Products are safe to use.

96.     Defendant concealed and omitted material facts regarding the true nature of the Affected Murad Products.

97.     The foregoing deceptive acts and practices were directed at consumers.

98.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Affected Murad Products to induce consumers to purchase the products.

99.     Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

100.    Defendant possessed information about the Affected Murad Products, including, but not limited to the fact that the Unsafe Color Additives included in the product are not safe for

26

use in the eye area, which was relevant to Plaintiff DeCoursey and New York Subclass members, but failed to disclose this information.

101.    By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

102.    Defendant's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff DeCoursey and members of the New York Subclass have sustained from having paid for Defendant's Affected Murad Products.

103.    As a result of Defendant's violations, Plaintiff DeCoursey and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Affected Murad Products on the same terms, if at all, if they knew that the Affected Murad Products were not safe for their intended use; and (b) the Affected Murad Products do not have the characteristics, uses, benefits, or qualities as promised.

104.    On behalf of herself and other members of the New York Subclass, Plaintiff DeCoursey brings this action to enjoin Defendant's unlawful and deceptive acts or practices and seeks to recover actual damages or fifty dollars, whichever is greater, per violation, three times actual damages, and reasonable attorneys' fees.

## COUNT III

**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350, *ET SEQ.***
**(On behalf of the New York Subclass)**

105.    Plaintiff DeCoursey hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

106.    Plaintiff DeCoursey brings this count on behalf of herself and all members of the New York Subclass that purchased Affected Murad Products.

27

107.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

108.    Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

109.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

110.    Defendant's false, misleading, and deceptive representations and omissions of fact about the Affected Murad Products were and are directed towards consumers.

111.    Defendant's false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

112.    Defendant's false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

113.    As a result of Defendant's false, misleading, and deceptive statements, representations of fact, and omissions, Plaintiff DeCoursey and the New York Subclass have suffered and continue to suffer economic injury.

114.    As a result of Defendant's violations, Plaintiff DeCoursey and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Affected Murad Products on the same terms, if at all, if they knew that the products were not safe for their intended use; and (b) the Affected Murad Products do not have the characteristics, uses, benefits, or qualities as promised.

28

115.    On behalf of herself and other members of the New York Subclass, Plaintiff

DeCoursey seeks to recover actual damages or five hundred dollars, whichever is greater for each

violation, three times actual damages, and reasonable attorneys' fees.

## COUNT IV

### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. §§ 407.010, *et seq.*)
### (On behalf of the Missouri Subclass Class)

116.    Plaintiff Sit hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

117.    This claim is brought by Plaintiff Sit against Defendant on behalf of herself and the

Missouri Subclass.

118.    Plaintiff Sit and Missouri Subclass members were at all relevant times consumers

under the Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq*. (the

"MMPA").

119.    Plaintiff Sit and Missouri Subclass members purchased Affected Murad Products

primarily for personal, family or household purposes.

120.    Defendant was at all relevant times engaged in "trade" or "commerce" under the

MMPA by way of its manufacturing, distributing, selling, marketing, and advertising the Affected

Murad Products at issue.

121.    Defendant's Affected Murad Products constitute "merchandise" under the MMPA.

122.    Defendant's foregoing acts and practices, including (1) failing to warn or disclose

to purchasers of the Affected Murad Products that the Affected Murad Products are not safe to use

in the eye area; (2) providing instructions to use the Affected Murad Products in the eye area; (3)

utilizing celebrities and influencers to advertise products and instruct consumers to use the

29

Affected Murad Products in the eye area; (4) advertising or marketing the Affected Murad Products while knowing, or in the direct position to know, that the Affected Murad Products should not have been sold in the manner in which they are; and (5) representing that the Affected Products are safe to use, were directed at consumers, including Plaintiff Sit and Missouri Subclass members.

123.     Defendant's foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Affected Murad Products to induce consumers to purchase the same.

124.     Defendant did not disclose material information to consumers, including Plaintiff Sit and Missouri Subclass members.

125.     Defendant's foregoing deceptive acts and practices, including its omissions while engaged in business, were and are deceptive acts or practices in violation of §§ 407.020.

126.     Plaintiff Sit and Missouri Subclass members suffered damages when they purchased the Affected Murad Products. Defendant's unconscionable, deceptive, and/or unfair practices caused actual damages to Plaintiff Sit and the Missouri Subclass members who were unaware that the Affected Murad Products were unsafe for their intended use at the time of purchase.

127.     Defendant's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

128.     Consumers, including Plaintiff Sit and Missouri Subclass members, would not have purchased the Affected Murad Products on the same terms, if at all, if they knew that the Affected Murad Products were not safe for their intended use

129.     As a direct and proximate result of Defendant's deceptive acts and practices, including its omissions, Plaintiff Sit and Missouri Subclass members have been damaged as

alleged herein, and are entitled to recover actual damages, punitive damages, and/or restitution to the extent permitted by law, including class action rules, in an amount to be proven at trial.

130.    In addition, Plaintiff Sit and Missouri Subclass members seek equitable and injunctive relief against Defendant on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

## COUNT V

### NEGLIGENCE – FAILURE TO WARN
### (On behalf of the Plaintiffs and the Nationwide Class)

131.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

132.    Plaintiffs bring this cause of action against Defendant individually and on behalf of the Nationwide Class.

133.    At all relevant times, Defendant was responsible for formulating, designing, constructing, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling Affected Murad Products to Plaintiffs and the Nationwide Class.

134.    At all relevant times, it was reasonably foreseeable by Defendant that the Affected Murad Products would be used in the eye area.

135.    At all relevant times, Defendant knew or had reason to know that the Affected Murad Products were not safe to be used in the eye area because they contained Unsafe Color Additives.

136.     Defendant, as the designer, manufacturer, tester, distributor, marketer, advertiser, and/or seller of Affected Murad Products, had a duty to warn Plaintiff and the Nationwide Class that the products should not be used in the eye area.

31

137.    At minimum, the duty arose for Defendant to warn consumers that the products were not safe to be used in the eye area.

138.    Defendant was negligent and breached its duty of care by negligently failing to provide adequate warnings to purchasers and users of the Affected Murad Products, including Plaintiffs and the Nationwide Class, regarding usage of the products and the fact that they should not be used in the eye area, because they contain Unsafe Color Additives.

139.    Defendant was negligent and breached its duty of care by failing to include any information regarding the risks and resulting injuries of using the Affected Murad Products in the eye area.

140.    Defendant was negligent and breached its duty of care by concealing the risks of and failing to warn consumers that the Affected Murad Products contain unsafe ingredients and are not safe for their intended purpose.

141.    Defendant knew, or through the exercise of reasonable care, should have known of the dangers associated with using the Affected Murad Products as described herein, and knew that Plaintiffs and Nationwide Class members could not reasonably be aware of those risks. Defendant failed to exercise reasonable care in providing Plaintiffs and the Nationwide Class with adequate warnings.

142.    As a direct and proximate result of Defendant's failure to adequately warn consumers that the Affected Murad Products should not be used in the eye area, and that if used as intended, could cause injuries and other damages, Plaintiff and the Nationwide Class have suffered damages, as described herein.

## COUNT VI

### UNJUST ENRICHMENT
### (On behalf of the Plaintiffs and the Nationwide Class)

143.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

144.    Plaintiffs and Nationwide Class members conferred benefits upon Defendant. Plaintiffs and Class members paid money for Defendant's Affected Murad Products that they would not have purchased or would not have purchased on the same terms, had they known that the products were unsafe for their intended use.

145.    Defendant has unjustly retained the benefits conferred upon by Plaintiffs and Class members.

146.    Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Murad Products contain Unsafe Color Additives rendering them unsafe for their intended use.

147.    If Plaintiffs and Nationwide Class members had known the true nature of Defendant's Affected Murad Products, they would not have purchased the products or would not have purchased them on the same terms. Plaintiffs and Nationwide Class members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

148.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Nationwide Class for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

b. Awarding Plaintiffs and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c. Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

d. For declaratory and equitable relief, including restitution and disgorgement;

e. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f. Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

g. Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

h. Awarding pre-judgment and post-judgment interest; and

i. Granting any other relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury of all claims so triable.


Dated: April 14, 2022                    Respectfully submitted,

                                         **LEVI & KORSINSKY, LLP**

                                         /s/ Mark S. Reich_____
                                         Mark S. Reich
                                         Courtney E. Maccarone (*pro hac vice* to be filed)
                                         55 Broadway, 10th Floor
                                         New York, NY 10006
                                         Telephone: 212-363-7500
                                         Facsimile: 212-363-7171
                                         Email: mreich@zlk.com
                                         Email: cmaccarone@zlk.com

                                         *Counsel for Plaintiffs*