**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JESSICA DECOURSEY and GRACE SIT,
on behalf of themselves and a class of all
others similarly situated,                                              3:22-cv-353 (AMN/ML)

                                        Plaintiffs,

v.

MURAD, LLC,

                                        Defendant.

_____

**APPEARANCES:**

**LEVI & KORSINSKY, LLP**
Mark S. Reich
Courtney E. Maccarone (admitted _pro hac vice_)
Gary I. Ishimoto (admitted _pro hac vice_)
55 Broadway, 10th Floor
New York, NY 10006
_Attorneys for Plaintiffs_

**DENTONS US LLP**
Michael Duvall
1221 Avenue of the Americas
New York, NY 10020

Grant J. Ankrom (admitted _pro hac vice_)
Michael E. Harriss (admitted _pro hac vice_)
211 N. Broadway, Suite 3000
St. Louis, MO 63102
_Attorneys for Defendant_

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiffs Jessica DeCoursey and Grace Sit ("Plaintiffs") bring this proposed class action

under 28 U.S.C. § 1332(d) against Defendant Murad, LLC ("Defendant"), seeking compensatory

and other monetary relief, injunctive, declaratory, and other equitable relief, and costs and attorneys' fees. Dkt. No. 1 at 34. In the Complaint, Plaintiffs assert six causes of action on behalf of consumers who purchased at least one of Defendant's cosmetic products (the "Affected Murad Products")[1] containing color additives which are alleged to be unsafe for use in the eye area (the "Unsafe Color Additives"),[2] as follows: (1) breach of implied warranty on behalf of a Nationwide Class[3] (Count I); (2) violation of New York General Business Law ("GBL") § 349 on behalf of a New York Subclass[4] (Count II); (3) violation of GBL § 350 on behalf of the New York Subclass (Count III); (4) violation of the Missouri Merchandising Practices Act ("MMPA") on behalf of a Missouri Subclass[5] (Count IV); (5) negligence – failure to warn, on behalf of the Nationwide Class (Count V)[6]; and (6) unjust enrichment on behalf of the Nationwide Class (Count VI). *Id*. at ¶¶ 7-8, 73-148.

---

[1] The Affected Murad Products refer to the following six products: Retinol Youth Eye Serum, Retinol Youth Renewal Night Cream, Retinol Youth Renewal Serum, Nutrient-Charged Water Gel, Clarifying Water Gel, and Hydrating Toner. Dkt. No. 1 at 1. Plaintiffs have reserved their right to amend this list. *Id*.

[2] As to the Affected Murad Products, the Unsafe Color Additives include FD&C Red No. 4, D&C Red No. 33, and D&C Orange No. 4. Dkt. No. 1 at ¶¶ 3, 23-26.

[3] Plaintiffs define "the Nationwide Class" as "All persons who purchased one or more of Defendant's Affected Murad Products in the United States for personal/household use within any applicable limitations period." Dkt. No. 1 at ¶ 63.

[4] Plaintiff DeCoursey brings this action "individually and on behalf of the New York Subclass." Dkt. No. 1 at ¶ 64. The New York Subclass is defined as "All persons who purchased one or more of Defendant's Affected Murad Products in the state of New York for personal/household use within any applicable limitations." *Id*.

[5] Plaintiff Sit "brings this action individually and on behalf of the Missouri Subclass." Dkt. No. 1 at ¶ 65. The Missouri Subclass is defined as "All persons who purchased one or more of Defendant's Affected Murad Products in the state of Missouri for personal/household use within any applicable limitations." *Id*.

[6] In their Opposition to Defendant's motion, Plaintiffs withdrew their negligence claim. *See* Dkt. No. 23 at 2, n.3.

Defendant has moved to dismiss certain of the claims in the Complaint under (1) Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction; (2) Fed. R. Civ. P. 12(b)(6) for failure to state a claim; and (3) Fed. R. Civ. P. 12(b)(1) for lack of standing to seek injunctive relief.[7]  Dkt. No. 18. Plaintiffs opposed Defendant's motion to dismiss and submitted Declarations in support of their Opposition.[8]  Dkt. No. 23.  Defendant replied.  Dkt. No. 24.  For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

## II.    BACKGROUND

The following facts are drawn from the Complaint and assumed to be true for purposes of this motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (*per curiam*).

Defendant is a Delaware company with its principal place of business in El Segundo, California.  Dkt. No. 1 at ¶ 17.  The proposed classes are comprised of consumers who purchased at least one of the Affected Murad Products, each of which contain at least one color additive that the FDA has prohibited in cosmetics intended for use in the eye area.  *Id.* at ¶¶ 3-4, 24-31; *see also* 21 CFR §§ 74.2304 (FD&C Red No. 4), 74.2333 (D&C Red No. 33), 74.2254 (D&C Orange No. 4); 21 U.S.C. § 379e(a)(1)(A).

Plaintiffs allege that Defendant "designs, formulates, manufactures, markets, advertises, distributes, and sells the Affected Murad Products both directly, and through authorized sellers, to consumers throughout the United States."  Dkt. No. 1 at ¶ 2.  Plaintiffs further allege that Defendant

---

[7] The Complaint seeks injunctive relief in the form of either requiring Defendant to remove unsafe color additives from the Affected Murad Products, or, in the alternative, to add "a plain and conspicuous warning" of the dangers posed by the use of the Affected Murad Products in the eye area and "ceasing of all advertisements and marketing materials instructing consumers to use the Affected Murad Products in the eye area."  Dkt. No. 1 at ¶ 13.

[8] *See* Dkt. Nos. 23-1, 23-2, 23-3 (Declarations of Grace Sit, Jessica DeCoursey, and Gary I. Ishimoto of Levi & Korsinsky, LLP).

knew or should have known of the dangers of using the Affected Murad Products in the eye area, and despite this, directed consumers through its advertising, marketing, and instructional videos, to use each of the Affected Murad Products in the eye area.  *Id.* at ¶¶ 5-7, 10-11.  For example, Defendant's website[9] instructs consumers to "gently pat Retinol Youth Renewal Eye Serum around under-eyes and lids."  *Id.* at ¶ 46.



*See, e.g., id.*[10]

Plaintiffs allege that Defendant could have either "produced the Affected Murad products without the unsafe color additives" or included a "prominent and conspicuous" safety warning alerting consumers that the products should not be used in the eye area.  *Id.* at ¶¶ 8, 59-60.  Plaintiffs further allege that had they and the putative class members known these products were unsafe for use in the eye area, they would have either not purchased the products or paid substantially less for them.  *Id.* at ¶¶ 9-11.[11]

---

[9] *See* MURAD, https://www.murad.com/product/new-retinol-youth-renewal-eye-serum/.

[10] The Complaint also includes images of Defendant's advertising, marketing, and instructional videos for the five other Affected Murad Products, showing the products being used in the eye area.  Dkt. No. 1 at ¶¶ 44-45, 47-50.

[11] Plaintiffs excluded from their proposed Class and Subclasses individuals alleging personal bodily injury resulting from the Affected Murad Products.  Dkt. No. 1 at ¶ 66.

As to the individual Plaintiffs, Plaintiff DeCoursey alleges she is a resident and citizen of New York and that in November 2021, she purchased Retinol Youth Renewal Eye Serum at an Ulta retail store located in Ithaca, New York.  *Id.* at ¶ 15.  DeCoursey further alleges that in June 2021, she purchased Retinol Youth Renewal Serum from an Ulta retail store located in Dickson City, Pennsylvania, and in November 2021, she purchased Retinol Youth Renewal Serum and Retinol Youth Renewal Night Cream from a CosmoProf retail store located in Scranton, Pennsylvania.  *Id*.  DeCoursey alleges that she relied on Defendant's representations and warranties in the accompanying labels and disclosures when deciding to purchase these products and would not have purchased the products had she known they contained unsafe color additives.  *Id.*

Plaintiff Sit alleges she is a resident and citizen of Missouri, and that in or around 2020, she purchased Retinol Youth Renewal Night Cream from a Macy's retail store located in St. Peters, Missouri, and in the summer of 2021, she purchased Clarifying Oil-Free Water Gel from a Walmart retail store located in either St. Peters or O'Fallon, Missouri.  *Id.* at ¶ 16.  Sit also alleges that she relied on Defendant's representations and warranties in the labels and disclosures, and had she known the products contained unsafe color additives, she would not have purchased them.  *Id.*

## III.   STANDARD OF REVIEW

### A.  Legal Standards Governing a Motion to Dismiss for Lack of Personal Jurisdiction

Defendant challenges the Court's personal jurisdiction over (1) Plaintiff DeCoursey's claims regarding her purchases of the Affected Murad Products in Pennsylvania; (2) Plaintiff Sit's claims regarding her purchases of the Affected Murad Products in Missouri; and (3) absent class members' claims regarding purchases of the Affected Murad Products outside of New York.  Dkt. No. 18 at 6.

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, No. 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005). "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Id.* (citation omitted). "Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id.* (citation omitted).

When "evaluating the parties' submissions, the Court will read the Complaint and submissions in the light most favorable to Plaintiff." *Daou v. Early Advantage, LLC*, 410 F. Supp. 2d 82, 88–89 (N.D.N.Y. 2006) (citations omitted). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff only needs to make "a *prima facie* showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). "In other words, prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith ... legally sufficient allegations of jurisdiction." *Id.* (internal quotation marks and citations omitted). However, "[i]f the plaintiff fails to make the requisite showing, [the Court] may dismiss the complaint pursuant to Rule 12(b)(2)." *Id.*

### B.  Legal Standards Governing a Motion to Dismiss for Failure to State a Claim

Defendant has also moved to dismiss Plaintiffs' claims for failure to state a claim. A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering legal sufficiency, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund,*

*Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).   This presumption, however, does not extend to legal conclusions.   *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss for failure to state a claim is generally limited to the facts presented in the pleadings, the court may consider documents that are "integral" to the pleadings even if they are neither physically attached to, nor incorporated by reference into, the pleadings.   *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss for failure to state a claim, a party need only plead "a short and plain statement of the claim," with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678 (citation omitted).   "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).   Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [] complaint must be dismissed."   *Id.* at 570.

### C. Legal Standards Governing a Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant challenges Plaintiffs' standing to seek injunctive relief.   *See* Dkt. No. 18 at 19-20.   A challenge to standing addresses the court's subject matter jurisdiction and is raised pursuant

to Fed. R. Civ. P. 12(b)(1).   *All. for Env't Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82,

87-88 (2d Cir. 2006); *Izquierdo v. Panera Bread Co*., 450 F. Supp. 3d 453, 460 (S.D.N.Y. 2020).

A claim may be dismissed for lack of subject matter jurisdiction where a district court lacks

constitutional or statutory power to adjudicate it.   *Makarova v. U.S*., 201 F.3d 110, 113 (2d Cir.

2000).   Plaintiff bears the burden of proving the court has subject matter jurisdiction by a

preponderance of the evidence.   *Id*. (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

When a court evaluates a motion to dismiss for lack of subject matter jurisdiction, all ambiguities

must be resolved, and inferences drawn, in favor of the plaintiff.   *Aurecchione v. Schoolman*

*Transp. Sys., Inc*., 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).   Further,

a district court may look to evidence outside of the pleadings when resolving a motion to dismiss

for lack of subject matter jurisdiction.   *Makarova*, 201 F.3d at 113.

## IV.    DISCUSSION

Defendant argues that (1) Plaintiff Sit's claims and Plaintiff DeCoursey's claims regarding

her purchases of the Affected Murad Products in Pennsylvania must be dismissed for lack of

personal jurisdiction, and the absent class members' claims regarding their purchases of the

Affected Murad Products outside of New York should be dismissed for lack of personal

jurisdiction; (2) Plaintiffs fail to state a claim for breach of implied warranty because Plaintiffs do

not allege privity of contract with Murad; (3) Plaintiff DeCoursey's GBL claims are deficient

because she alleges a "deception as an injury" theory and has not adequately alleged a "price

premium" theory; (4) Plaintiffs fail to allege an affirmative misrepresentation, except as to

Murad's Retinol Youth Eye Serum, on any of the product labels or disclosures or that they viewed

and/or relied on Defendant's website, video, or other marketing materials directing customers to

use the Affected Murad Products in the eye area; (5) Plaintiffs' unjust enrichment claim must be

dismissed as duplicative; and (6) Plaintiffs lack standing to seek injunctive relief because they do not allege a likelihood of future harm.  The Court addresses each argument in turn.

### A.  Personal Jurisdiction

There are "two categories of personal jurisdiction: general and specific personal jurisdiction." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (internal quotation marks and citation omitted).  General personal jurisdiction subjects a defendant to suit on all claims.  *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, No. 14 Civ. 01568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A court has general jurisdiction over a corporation where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919).  Except in exceptional circumstances, a corporation is "'essentially at home,'… where it is incorporated or where it has its principal place of business." *Brown v. Lockheed Martin Corp*., 814 F.3d 619, 627 (2d Cir. 2016) (quoting *Daimler AG*, 571 U.S. at 139).

Specific personal jurisdiction subjects a defendant to suit only on claims that arise out of or relate to the defendant's conduct in the forum state.  *Vasquez v. Hong Kong & Shanghai Banking Corp*., *Ltd*., 477 F. Supp. 3d 241, 251–52 (S.D.N.Y. 2020) (citation omitted).  The plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant, when served with a 12(b)(2) motion to dismiss." *Aldinger v. Segler*, No. 04-CV-4405 (RJH), 2005 WL 2591958, at *2 (S.D.N.Y. Oct. 13, 2005) (internal quotation marks and citation omitted).

### 1.  General Jurisdiction

Defendant argues, and the Court agrees, that Plaintiffs have not demonstrated that Defendant is "at home" in New York as to establish general personal jurisdiction here.  *See* Dkt.

No. 18 at 7.  Plaintiffs did not directly address Defendant's general jurisdiction argument and instead only reference a forum-selection clause in Defendant's "terms of use," although Plaintiffs have admitted that the clause does not "apply to the instant case."  *See* Dkt. No. 23 at 7.

Plaintiffs have not alleged that Defendant is incorporated or has its principal place of business in New York.  *See* Dkt. No. 1 at ¶ 17 ("Murad, LLC is a Delaware company with its principal place of business located" in California).  Plaintiffs' allegations that Defendant "sold the Affected Murad Products to consumers in New York" and "derives substantial revenue" from such sales, *id.* at ¶ 19, do not establish an "exceptional circumstance" which would confer general personal jurisdiction over Defendant.  *See Weisblum v. Prophase Labs, Inc*., 88 F. Supp. 3d 283, 290 (S.D.N.Y. 2015) ("The mere fact that [Defendant] sells its products in New York does not suffice to show that [Defendant's] contacts with New York are 'so substantial and of such a nature as to render the corporation at home.'") (quoting *Daimler AG*, 571 U.S. at 139 n.19).  Accordingly, the Court does not have general jurisdiction over Defendant.

### 2. Specific Jurisdiction

The parties do not dispute that the Court has specific personal jurisdiction over Defendant with respect to Plaintiff DeCoursey's purchase of Murad Retinol Youth Eye Serum in New York. *See* Dkt. No. 18 at 9; Dkt. No. 23 at 4.  However, the parties disagree as to whether the Court can exercise specific jurisdiction over (1) Plaintiff Sit's claims; (2) Plaintiff DeCoursey's claims based on purchases she made in Pennsylvania; and (3) absent class members' claims based on purchases outside of New York.  *See* Dkt. No. 18 at 7-11; Dkt. No. 23 at 4-7.

Defendant contends that *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 137 S. Ct. 1773 (2017), applies in federal court to both the named plaintiffs and absent members of a proposed federal class action.  *See* Dkt. No. 18 at 8-9.  In *Bristol-Myers*, California

and non-California residents brought a mass tort claim regarding Plavix, a prescription drug, in California state court against Bristol-Myers, which is incorporated in Delaware and headquartered in New York. *Bristol-Myers*, 582 U.S. at 258-59.  Plaintiffs consisted of 86 California residents and 592 residents of thirty-three other states. *Id.* at 259.  The nonresident plaintiffs alleged that their injuries took place outside of California. *Id.*

The Supreme Court held that the California state court lacked specific personal jurisdiction over the non-California residents' claims because the conduct giving rise to those claims did not occur in California. *Id*. at 264-65.  The Supreme Court reasoned:

> [T]he nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.  The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims …What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*Id*.  The Supreme Court, however, explicitly refrained from deciding whether its reasoning would apply to questions of personal jurisdiction in federal court, including in federal class actions. *Id.* at 268-69 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."); *see also Rothschild v. Gen. Motors LLC*, No. 19-cv-05240 (DLI) (RLM), 2020 WL 13581659, at *15 (E.D.N.Y. Sept. 30, 2020) (noting that *Bristol-Myers* left open whether "its holding applied to nationwide class actions") (citation omitted).

### a.  Named Plaintiffs' Claims

Defendant argues that the holding in *Bristol-Myers* was premised on a violation of due process, and that the Court's rationale applies to the named Plaintiffs in this case. *See* Dkt. No. 18

at 7-10 (citing *Bristol-Myers Squibb Co.*, 582 U.S. at 267).  As a result, Defendant asserts that Plaintiff Sit's claims and Plaintiff DeCoursey's claims arising out of her purchases in Pennsylvania should be dismissed.  *Id*.  The Court agrees with Defendant that it does not have specific jurisdiction over Defendant with respect to these claims, but finds it unnecessary to reach the question of whether an exercise of personal jurisdiction over Defendant comports with Due Process under *Bristol-Myers* or otherwise.

As an initial matter, federal courts both before and after *Bristol-Myers* have acknowledged that specific jurisdiction over a defendant in a putative class action must be assessed with respect to the named plaintiffs' claims.  *See, e.g., Suarez v. Cal. Nat. Living, Inc.*, No. 17-CV-9847, 2019 WL 1046662, at *6 (S.D.N.Y. Mar. 5, 2019) (stating that "specific jurisdiction in a class action arises from the named plaintiff's causes of action"); *Chernus v. Logitech, Inc.*, No. 17-CV-673, 2018 WL 1981481, at *3 (D.N.J. Apr. 27, 2018) ("Importantly, in the context of a Rule 12(b)(2) analysis, when a suit is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action."); *Beach v. Citigroup Alt. Invests. LLC*, No. 12 Civ. 7717 (PKC), 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014) (in a class action, "personal jurisdiction is based on a defendant's contacts with the forum state and actions giving rise to the named plaintiffs' causes of action").

To assess whether it has specific jurisdiction over Defendant with respect to the named Plaintiffs' claims based on out-of-state purchases, the Court must determine whether three requirements are met: "First, the plaintiff's service of process upon the defendant must have been procedurally proper …. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective .... Third, the exercise of personal jurisdiction must

comport with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012).

Defendant does not dispute that it was properly served with process.  As a result, the Court begins with an analysis of the statutory basis for jurisdiction.  Where plaintiffs bring state law claims in federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), the relevant state's long-arm statute provides the statutory basis for personal jurisdiction.  *Napoli-Bosse v. General Motors LLC*, 453 F. Supp. 3d 536, 541-42 (D. Conn. 2020) (because CAFA does not permit nationwide service of process, personal jurisdiction over plaintiffs' state law claims must be based on the state long-arm statute) (citing *Chufen Chen v. Dunkin' Brands, Inc.*, 2018 WL 9346682, at *5 (E.D.N.Y. Sept. 17, 2018); Rule 4(k)(1) (listing the statutory bases for effective service)).  Here, Plaintiffs bring their claims pursuant to CAFA and thus specific jurisdiction over Defendant is based on the New York long-arm statute.  As such, the Court must "first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause." *Licci ex rel. Licci*, 673 F.3d at 61.

"New York's long-arm statute allows for personal jurisdiction by acts of non-domiciliaries where the non-domiciliary, '(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state ...; or (3) commits a tortious act without the state causing injury to person or property within the state ... if [it] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.'" *Gazzillo v. Ply Gem Indus., Inc*., No. 1:17-

CV-1077 (MAD/CFH), 2018 WL 5253050, at *4 (N.D.N.Y. Oct. 22, 2018) (quoting N.Y. C.P.L.R. § 302(a)).

### i.    CPLR § 302(a)(1)

CPLR § 302(a)(1) "requires a two-pronged jurisdictional inquiry.  The first inquiry is whether defendant conducted sufficient activities to have transacted business within the state; the second inquiry is whether plaintiff's claims arise from the transactions." *Eng. v. Avon Prod., Inc.*, 206 A.D.3d 404, 406 (1st Dep't 2022) (citations omitted).  "For a cause of action to arise from the defendant's business transaction in the state, there must be 'an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Gazzillo*, 2018 WL 5253050, at *4 (quoting *Saudi v. Marine Atl., Ltd.*, 306 Fed. Appx. 653, 654 (2d Cir. 2009)).

Plaintiffs allege that Defendant "sold the Affected Murad Products to consumers in New York."  Dkt. No. 1 at ¶ 19.  However, Plaintiff Sit's claims based on her allegation that she purchased the Affected Murad Products at retail stores in Missouri and Plaintiff DeCoursey's claims based on her allegation that she purchased the Affected Murad Products from retail stores in Pennsylvania, *see* Dkt. No. 1 at ¶¶ 15-16, do not arise out of Murad's business activities in New York.  Therefore, CPLR § 302(a)(1) is inapplicable to Plaintiff Sit's claims and Plaintiff DeCoursey's claims as to her purchases in Pennsylvania.

### ii.    CPLR § 302(a)(2)

Under CPLR § 302(a)(2), the court has personal jurisdiction if the defendant commits a tortious act within the state.  A "defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789-90 (2d Cir. 1999) (CPLR § 302(a)(2) "gives the court 'personal jurisdiction over

any non-domiciliary ... who in person or through an agent ... commits a tortious act within the state....' At minimum, to qualify for jurisdiction under this subsection, 'a defendant's act or omission [must have] occur[red] within the State.'") (quoting *Kramer v. Vogl*, 17 N.Y.2d 27, 31 (1966)).  CPLR § 302(a)(2) is inapplicable to Plaintiff Sit's claims concerning her purchases of the Affected Murad Products in Missouri and Plaintiff DeCoursey's claims concerning her purchases of the Affected Murad Products in Pennsylvania.  *See* Dkt. No. 1 at ¶¶ 15-16.  Any tortious act that may have occurred in connection with these claims took place outside New York.

### iii.    CPLR § 302(a)(3)

CPLR § 302(a)(3) permits jurisdiction in New York when tortious acts are committed outside of New York but cause injuries in this State.  "To establish personal jurisdiction under CPLR § 302(a)(3), a plaintiff must show that (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; and (4) the defendant (a) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York or (b) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  *Gazzillo*, 2018 WL 5253050, at *4 (citing CPLR § 302(a)(3)).

"To determine whether an injury occurred within the state, New York courts apply the situs-of-injury test, which asks them to locate the 'original event which caused the injury.'" *Id.* (quoting *Bank Brussels Lambert*, 171 F.3d at 791).  The "situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Whitaker v. Am. Telecasting, Inc*., 261 F.3d 196, 208 (2d Cir. 2001)).

15

Here, the event that caused Plaintiffs' alleged injury is their purchase of the Affected Murad Products. Therefore, the situs of the injury of Plaintiff Sit's and Plaintiff DeCoursey's out-of-state purchases are Missouri and Pennsylvania, respectively, not New York. *See Spratley v. FCA US LLC,* No. 3:17-CV-0062, 2017 WL 4023348, *6 (N.D.N.Y. Sept. 12, 2017) (finding the situs of injury was New Jersey because the plaintiff purchased his car in New Jersey even though he suffered financial consequences in New York).

Since the Court has concluded that New York's long-arm statute does not apply to grant the Court personal jurisdiction over Defendant as to Plaintiff Sit's claims and Plaintiff DeCoursey's claims as to her purchases in Pennsylvania, there is no need to consider whether an exercise of personal jurisdiction over Defendant comports with due process. *See Licci ex rel. Licci*, 673 F.3d at 61; *Allstate Vehicle & Prop. Ins. Co. v. Catskill Farms, Inc*., No. 1:17-CV-1017 (TJM) (DJS), 2018 WL 6573331, at *4 (N.D.N.Y. Dec. 13, 2018). Therefore, due to the absence of any facts establishing a connection between Plaintiff Sit's claims and New York, the Court grants Defendant's motion to dismiss Plaintiff Sit.[12] Additionally, the Court grants Defendant's motion to dismiss Plaintiff DeCoursey's claims related to her purchases in Pennsylvania.[13]

### b. Putative Class Members' Out-of-State Claims

---

[12] Because Plaintiff Sit is dismissed from the lawsuit, Plaintiff Sit's MMWA claim must also be dismissed. Further, because the claim pursuant to the MMWA was the only claim asserted on behalf of the Missouri Subclass, dismissal of that claim also requires dismissal of the Missouri Subclass.

[13] Plaintiff DeCoursey's claims as to her Pennsylvania purchases must also fail for an additional reason. As discussed below, Plaintiff DeCoursey's only remaining counts are GBL §§ 349 & 350 (Counts II and III). A Plaintiff can only raise GBL §§ 349 & 350 claims based on injuries that occur in New York. *See 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 547 (S.D.N.Y. 2014) ("Sections 349 and 350 contain a 'territoriality' requirement: to state a claim under either provision, the deception of consumers must occur in New York.") (citing *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 314-15 (2002)). Because any injury from the Pennsylvania purchases occurred in Pennsylvania, the GBL §§ 349 & 350 claims attributable to DeCoursey's activities in Pennsylvania are dismissed on this basis, as well.

The parties agree that *Bristol-Myers* does not prohibit the claims of putative class members for whom there is specific personal jurisdiction in New York.  *See* Dkt. No. 18 at 10; Dkt. No. 23 at 5.  However, the parties disagree as to whether *Bristol-Myers* applies to the claims asserted on behalf of putative class members in the Missouri Subclass[14] and Nationwide Class whose claims do not arise out of purchases of the Affected Murad Products in New York.

As Justice Sotomayor noted in dissent, *Bristol-Myers* does not address this question.  *See* 582 U.S. at 278 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there.").  Following *Bristol-Myers*, federal district courts have been split as to whether its rationale should apply to absent class members in federal class actions.  *See Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780 (MKB), 2019 WL 2088609, at *5 (E.D.N.Y. May 13, 2019), *adopted by* 2019 WL 3940846 (Aug. 19, 2019) (collecting cases).  While the Second Circuit has not decided this issue, two federal Circuit Courts have addressed the applicability of *Bristol-Myers* to absent class members in federal class actions and both courts have held that it does not apply.  *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1126 (2021); *Lyngaas v. Ag*, 992 F.3d 412, 435 (6th Cir. 2021).

In *Mussat*, the Seventh Circuit held that in a class action, "the absentees are more like nonparties, and thus there is no need to locate each and every one of them and conduct a separate personal-jurisdiction analysis of their claims."  *Mussat*, 953 F.3d at 448.  The court explained that "absent class members are not full parties to the case for many purposes," including determining

---

[14] Because Plaintiff Sit is dismissed from the lawsuit, the Court will only consider the claims of the Nationwide Class.

whether diversity jurisdiction exists or whether venue is proper, and found "no reason why personal jurisdiction should be treated any differently from subject matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* at 447 (citations omitted).

In *Lyngaas*, the Sixth Circuit followed the Seventh Circuit's reasoning in *Mussat*. *Lyngaas*, 992 F.3d at 435.  The court distinguished the state court tort action in *Bristol-Myers*, which involved a coordinated mass action of almost 700 named plaintiffs, from a federal class action involving hundreds or even thousands of unnamed class members, explaining:

> In a class action context … [t]he defendant is presented with a unitary, coherent claim to which it need respond only with a unitary, coherent defense.  In this sense, the only suit before the court is the one brought by the named plaintiff.  Thus, when the court considers whether the suit arises out of or relates to the defendant's contacts with the forum, the court need analyze only the claims raised by the named plaintiff, who in turn represents the absent class members.

*Id.* (internal quotations marks and citations omitted).

The majority of courts, including district courts in this Circuit, have found that *Bristol-Myers* does not apply to putative class members in the class action context.  *See, e.g.*, *Cummings v. FCA US LLC,* 401 F. Supp. 3d 288, 318 (N.D.N.Y. 2019) (noting that the majority of courts have found that *Bristol-Myers* "does not apply in the federal class action context" and collecting cases, but declining to decide the issue with respect to the proposed nationwide class before a motion for class certification); *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 372 (E.D.N.Y. 2022), *amended on reconsideration in part*, No. 17-CV-5172 (EK) (VMS), 2023 WL 1994201 (E.D.N.Y. Feb. 14, 2023) (adopting the reasoning in *Mussat* and *Lyngaas* and granting plaintiffs' motion for class certification); *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1332 (D. Minn. 2018) ("The Court … holds that [*Bristol-Myers*] is inapplicable to unnamed parties in a federal class

action suit"); *Jones v. Depuy Synthes Prod.*, Inc., 330 F.R.D. 298, 311 (N.D. Ala. 2018) (stating that "[t]he court agrees" with "several other district courts [that] have concluded that *Bristol-Myers* does not apply to the claims of unnamed putative class members," and noting that it is premature to consider striking the proposed nationwide class on personal jurisdiction grounds before plaintiffs have moved for class certification).

In addition, district courts have held that *Bristol-Myers* does not apply to the unnamed class members of a proposed nationwide class action even where, as here, the underlying claims are brought under state or common law and the court has diversity jurisdiction. *See, e.g.*, *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *2, 5 (N.D. Cal. Sept. 22, 2017) (holding that *Bristol-Myers* does not apply to a proposed nationwide class action containing "only California State Law Claims"); *Wiggins v. Bank of Am., N. Am.,* 488 F. Supp. 3d 611, 628 & n.4 (S.D. Ohio 2020) (finding that "*Bristol-Myers* does not apply to Rule 23 class actions" in a proposed nationwide class asserting only state law claims); *Knotts*, 346 F. Supp. 3d at 1332 (finding in a class action asserting claims under Minnesota statutory law and under the common law, that *Bristol-Myers* is "inapplicable to unnamed parties in a federal class action suit"). The holdings in these cases comport with the reasoning in *Mussat* and *Lyngaas* that unnamed class members should not be treated as parties for purposes of personal jurisdiction; this reasoning holds true regardless of whether the putative class brings federal or state law claims.

The Court agrees with the Sixth and Seventh Circuits and with the majority of district courts that have addressed this issue, and finds that *Bristol-Myers* does not apply to unnamed putative class members in federal class actions.  Therefore, the Court denies Defendant's motion to dismiss the class allegations as to the putative class members who purchased the Affected Murad Products outside of New York for lack of personal jurisdiction.

**B. Breach of Implied Warranty of Merchantability Claim**

Defendant next argues that Plaintiffs' breach of implied warranty claim (Count I) must be dismissed for failure to state a claim because Plaintiffs were not in privity with Defendant. The Court agrees.

Section 2-314 of the Uniform Commercial Code (which has been adopted by New York) states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314. "To be merchantable, goods 'must be fit for the ordinary purposes for which such goods are used; and conform to the promises or affirmations of fact made on the label or container if any.'" *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (alterations omitted) (quoting N.Y. U.C.C. § 2-314(2)). While some courts in other jurisdictions have moved away from the requirement of privity,[15] "New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warrant[y] of merchantability … where the only loss alleged is economic."[16] *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (citation omitted); *see also Colangelo v. Champion Petfoods USA, Inc.,* No. 18-

---

[15] *See, e.g., Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App. 4th 949, 957 (2005) (recognizing a third-party beneficiary exception to privity under California law); *Varner v. Domestic Corp.*, No. 16-22482-Civ-Scola, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017) ("Florida law [] recognizes that, in some situations, a person who is not a party to a contract can enforce the terms of the contract if 'the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member.'") (quoting *Greenacre Props., Inc. v. Rao*, 933 So. 2d 19, 23 (Fla. Dist. Ct. App. 2006)); *Elward v. Electrolux Home Prods., Inc.,* 214 F. Supp. 3d 701, 706 (N.D. Ill. 2016) (recognizing a third-party beneficiary exception to privity under Illinois law).

[16] Recognizing that many consumers purchase products from authorized retailers or resellers, New York has eliminated the privity requirement for claims alleging breach of implied warranty where personal injury results from a defective product. *See Mott v. Jet Sport Enters., Inc.*, No. 11-27103, 2012 WL 3134206, at *3 (N.Y. Sup. Ct. July 11, 2012) (citations omitted). Additionally, New York recognizes strict products liability as a separate and distinct cause of action from breach of implied warranty. *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258-59 (1995).

CV-1228 (LEK/ML), 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020) ("'[N]o implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged.'") (quoting *Lexow & Jenkins, P.C. v. Hertz Commercial Leasing Corp*., 122 A.D.2d 25, 26-27 (2d Dep't 1986)); *In re Scotts EZ Seed Litig.,* No. 12-CV-4727 (VB), 2013 WL 2303727, at *8 (S.D.N.Y. May 22, 2013) ("[C]ourts have expressed a policy against holding manufacturers liable to end-consumers under a theory of implied warranty where the parties are not in privity.") (citation omitted).

Here, Plaintiffs allege only economic loss, not personal injury.  *See* Dkt. No. 23 at 16, n.9. Further, Plaintiffs allege that they purchased the Affected Murad Products through third-party retailers, not directly from Defendant.  *See* Dkt. No. 1 at ¶¶ 15-16 (alleging that Plaintiffs purchased Defendant's products from Ulta, CosmoProf, Macy's, and Walmart retail stores). Remote purchasers, like Plaintiffs, are not in privity with a product's manufacturer.  *See Weisblum*, 88 F. Supp. 3d at 296.

Plaintiffs attempt to circumvent the privity requirement by making two arguments.  First, Plaintiffs argue that Defendant sells directly to consumers through its own website and its Amazon store, and other than buying directly from the Defendant, consumers can only purchase Defendant's products from limited "authorized retailers," including Macy's and Ulta.  *See* Dkt. No. 23 at 14-15.  Plaintiffs further argue that because Defendant offers a "Murad Guarantee,"[17] Defendant considers purchases either directly through Murad or through one of its authorized retailers "to be one and the same," so that privity exists in both transactions.  *Id.* at 15.  This argument must be rejected.  First, the named Plaintiffs here did not purchase directly from Murad,

---

[17] The Murad Guarantee states, "[w]hen you place an order for products through Murad.com or any of the Authorized Retailers below, your products are guaranteed."  Dkt. No. 23 at 15 (citing *Authorized Retailers*, MURAD, https://www.murad.com/authorized-retailers/).

either via its website or its Amazon store.  Moreover, Plaintiffs provide no legal authority supporting the proposition that purchases made via authorized retailers where the defendant has a product guarantee in place for such purchases creates privity between Plaintiffs and Defendant.

Second, Plaintiffs argue that by directing consumers to purchase from Defendant itself or from authorized retailers through the "Murad Guarantee," Plaintiffs and proposed class members are the intended beneficiaries of any agreements between Murad and its retailers.  *See* Dkt. No. 23 at 15.  This argument must also fail on the facts as alleged by Plaintiffs.

New York law recognizes an exception to the privity requirement where a remote purchaser is the intended beneficiary of a contract.  *See Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009) (alleging claim for breach of implied warranty where purchaser was a third-party beneficiary of a distribution contract between manufacturer and supplier).  To claim rights as a third-party beneficiary, Plaintiff "must demonstrate (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." *Catalano*, 167 F. Supp. 3d at 557 (citation omitted).

Plaintiffs have not alleged any facts showing the existence of a contract between Murad and its authorized retailers, that any such contract was intended for Plaintiffs' benefit, or that any benefit includes that the contracting parties have assumed a duty to compensate Plaintiffs if the benefit is lost.  In the absence of such allegations, Plaintiffs fail to allege plausible facts demonstrating that this exception applies.  *See Cummings*, 401 F. Supp. 3d at 313 ("Plaintiff has failed to allege facts plausibly suggesting the applicability of such exception here because she has not included any factual allegations regarding the contract between Defendant and the authorized

dealer, much less any factual allegations plausibly suggesting that the contract was intended to provide a sufficiently immediate benefit to her."); *MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 335 (N.D.N.Y. 2021) ("Plaintiff has not alleged the existence of a contract between a supplier and Defendant intended for her immediate benefit, and thus, does not satisfy the requirements for such an exception.").  The only facts that Plaintiffs allege to support their assertion that they are intended beneficiaries is that Murad "exercises substantial control over which outlets can carry and sell its products" and that Defendant's "warranties are in no way designed to apply to" the third-party retailers, resellers, and distributors.  *See* Dkt. No. 1 at ¶ 84. These allegations are insufficient to show that Plaintiffs are the intended beneficiaries of any agreements between Defendant and its retailers.  Accordingly, Plaintiffs' implied warranty claim (Count I) must be dismissed for failure to state a claim.

### C.  Plaintiffs' General Business Law Claims

New York GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any services in this state," while GBL § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. L. §§ 349 and 350.  "'The standard for recovery under … § 350, while specific to false advertising, is otherwise identical to [§] 349.'"  *Cosgrove v. Oregon Chai, Inc*., 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting *Goshen*, 98 N.Y.2d at 324 n.1); *see also Duran v. Henkel of Am*., *Inc*., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 and that its essential elements are the same." (alteration and citation omitted)).

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3)

plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 944 (2012)).  A "'violation of either section [349 or 350] requires that the defendant's conduct deceive a reasonable consumer in a material respect, work a harm to the public at large, and directly cause the plaintiff's injury.'" *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 607 (S.D.N.Y. 2012) (quoting *Leider v. Ralfe*, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)).  The Parties disagree as to whether Plaintiffs' allegations satisfy the second and third elements.

### 1. Plaintiff DeCoursey's Allegations of an Injury Pursuant to GBL §§ 349 and 350

Defendant argues that Plaintiff DeCoursey's claims under GBL §§ 349 & 350 are deficient because she alleges a "deception as an injury" theory by claiming that she would not have purchased the Affected Murad products had she known that the products contain unsafe color additives. *See* Dkt. No. 18 at 15 (citing Dkt. No. 1 at ¶ 15).  Defendant further argues that Plaintiff DeCoursey has not adequately alleged a "price premium" theory, but rather makes a conclusory allegation that Plaintiffs "paid a premium for the Affected Murad Products" and that they would not have purchased the products "on the same terms" had they known the products contained unsafe color additives, without providing supporting facts, including what premium was charged. *Id.* at 15-16 (citing Dkt. No. 1 at ¶¶ 85, 103).  In response, Plaintiffs argue that in a false advertising case, the injury is the purchase price and that Plaintiff DeCoursey's allegations that she paid a premium for the Affected Murad Products based on Defendant's representations is sufficient to satisfy the injury requirement. *See* Dkt. No. 23 at 8-10.

To plead an injury pursuant to either GBL §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y.

2021) (quoting *Orlander*, 802 F.3d at 302).  The Court agrees with Defendant that "deception as an injury" is insufficient to allege a claim for consumer fraud under New York law.  *See Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012) ("New York courts have rejected the notion that a defendant's deception alone—in other words, allegations of pecuniary loss arising solely from the purchase of the defendant's product—may suffice to plead 'actual injury' for a Section 349 claim .… Rather, a plaintiff must plead something more than the defendant's deception; for example, that 'the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'") (quoting *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007)); *see also Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77, 78 (1st Dep't 2004) (finding the "court correctly dismissed the claims under General Business Law §§ 349 and 350" because Plaintiffs "impermissibly set up the deception as both act and injury, a theory specifically rejected by [New York] courts"); *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43, 55-56 (1999) (rejecting the theory that "consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349").

However, an injury under GBL §§ 349 and 350 may be alleged under a price premium theory.  *See Colpitts*, 527 F. Supp. 3d at 577; *see also Kraus v. Snow Teeth Whitening LLC*, No. 20-cv-6085 (JMA) (ST), 2022 WL 4642170, at *4 (E.D.N.Y. Sept. 15, 2022) (In a false-advertising case, "the 'injury is the purchase price.'") (quoting *Ebin v. Kangadis Food Inc.*, 13 Civ. 2311 (JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013)).  Where plaintiff alleges a price premium theory, the injury requirement is satisfied by "an allegation that a plaintiff overpaid for the product, or, stated differently, 'by a claim that a plaintiff paid a premium for a product based on [the] defendants' inaccurate representations.'"  *Fishon v. Peloton Interactive, Inc.*, No.

19-CV-11711 (LJL), 2020 WL 6564755, at *10 (S.D.N.Y. Nov. 9, 2020) (quoting *Ackerman v. Coca–Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010)) (citation omitted).

In the Complaint, Plaintiffs allege that they and the putative class members purchased the Affected Murad Products with the expectation that the products were safe for use in the eye area and had "Plaintiffs and Class members known the Affected Murad Products were unfit for their intended purpose, they would not have purchased Affected Murad Products or would have paid substantially less for them." *See* Dkt. No. 1 at ¶¶ 9, 11.  Plaintiff DeCoursey also alleges that she "would not have purchased the Affected Murad Products on the same terms, if at all" had she known "that the products contained unsafe color additives." *Id.* at ¶¶ 15, 103, 114.  As a result, "Plaintiffs and class members were deprived of the benefit of their bargain." *Id.* at ¶ 9.

The Court finds that Plaintiff DeCoursey's allegations adequately allege an injury under GBL §§ 349 & 350.  *See Fishon*, 2020 WL 6564755, at *11 (allegations that the plaintiffs would not have purchased the product, or would not have purchased it on the same terms had they known the truth, were sufficient to survive dismissal because "[n]o more is necessary at [the motion to dismiss] stage"); *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS) (TWD), 2016 WL 406295, at *10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under GBL § 349 where he alleged that, had he "known 'the truth,'" he "would not have bought the vodka, or would have paid less for it"); *Koenig v. Boulder Brands, Inc.,* 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) (finding a sufficiently-pled § 349 injury where the plaintiff alleged that he would not have paid the price charged for fat-free milk had he known it contained fat); *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 455-56 (S.D.N.Y. 2022) (finding that plaintiff adequately

pled the injury prong of her GBL claims because she alleged she paid a premium for a product based on the defendant's representation that the product was "microbiome gentle").

Defendant argues that a price-premium theory requires Plaintiffs to "allege[] that a company marketed a product as having a 'unique quality,' that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality."  Dkt. No. 18 at 15 (citing *Duran*, 450 F. Supp. at 350).  Defendant further argues that a plaintiff must allege "what the premium was" or "the price of non-premium products."  *Id.* at 16 (quoting *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018)).

Defendant's reliance on *Duran* is misguided.  In *Duran*, the court stated that an allegation a product had a "unique quality" that it did not in fact have was an example, not a requirement, of valid GBL §§ 349 and 350 claims.  *See Duran*, 450 F. Supp. 3d at 350 (stating that a price premium allegation "often takes the [] form" of alleging a "unique quality").  Rather, to allege a price premium claim, a plaintiff is required to allege "that defendants charged a price premium [and] that there is a 'connection between the misrepresentation and any harm from, or failure of, the product.'"  *Id.* (quoting *DaCorta v. AM Retail Grp., Inc.*, No. 16-CV-01748 (NSR), 2018 WL 557909, at *7 (S.D.N.Y. Jan. 23, 2018)).

Moreover, the court in *Duran* did not require a plaintiff to identify price comparators when alleging a price premium theory.  *Id.* at 352.  The court stated that "[a]lthough plaintiffs sometimes point to comparators in support of a price premium claim… a plaintiff is not required to do so in order to allege injury."  *Id.* (internal citation omitted); *see also Goldemberg v. Johnson & Johnson Consumer Cos., Inc.,* 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("[W]hile identifying the prices of competing products in the Complaint would strengthen Plaintiff's allegation of injury ..., the failure

to do so is not fatal to Plaintiff's claim.") (internal citation omitted).  The *Duran* Court found that the following allegations were sufficient to allege a price premium theory of injury: "Duran and other consumers paid full price for the Product but received something inferior to what [the defendant] had promised" and that "had Duran known that the Product produced flakes, he would not have purchased the Product, or would have only paid significantly less for it."  *Id.* at 351 (internal citations omitted).

Moreover, claims under GBL §§ 349 & 350 are "'not subject to the pleading-with-particularity requirements of Rule 9(b)' …. They 'need only meet the bare-bones notice-pleading requirements of Rule 8(a).'"  *Manchanda v. Navient Student Loans*, No. 19CV5121, 2020 WL 5802238, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *Pelman ex rel. Pelman v. McDonald's Corp*., 396 F.3d 508, 511 (2d Cir. 2005)).  Under Rule 8(a), "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To satisfy this standard, the complaint must at a minimum 'disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery.'"  *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (quoting *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000)).

The Court therefore finds that Plaintiff DeCoursey has sufficiently alleged an injury under GBL §§ 349 & 350 in the Complaint.

## 2.  Plaintiff DeCoursey's Omission Claim Under GBL § 349

Defendant next argues that to state a claim under GBL § 349 for deception based on a failure to disclose theory, "a plaintiff must allege either that the defendant was in exclusive possession of the relevant information or that a consumer could not reasonably obtain the information."  Dkt. No. 18 at 17 (citing *Womack v. EVOL Nutrition Assocs.*, No. 6:21-cv-00332

(BKS) (TWD), 2022 WL 3371213, at *3 (N.D.N.Y. Aug. 16, 2022)).  Defendant points out that
Plaintiffs acknowledge that there are publicly available sources which could inform consumers
that the Affected Murad Products are unsafe for use in the eye area.  *Id.* at 17-18.  Specifically, the
Complaint cites to publicly available sources including "safety data sheet(s)," FDA regulations,
and links to FDA website(s) concerning "Color Additives Permitted for Use in Cosmetics," *see id.*
(citing Dkt. No. 1 at ¶¶ 24-32 & nn. 6-22), and Defendant argues that these publicly available
sources undercut Plaintiff's failure to disclose theory of liability.  *Id.* at 18 (citing *Womack*, 2022
WL 3371213, at *5 (dismissing an omissions-based GBL claim where information regarding the
challenged ingredient was readily accessible)).

       In their opposition, Plaintiffs argue that under the GBL, "a deceptive act is defined as one
'likely to mislead a reasonable consumer acting reasonably under the circumstances,'" *see In re
Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015), and whether a reasonable consumer
would be misled by Defendant's omission is a question of material fact.  Dkt. No. 23 at 11.
Plaintiffs further argue that it is unreasonable to expect consumers to cross-reference multiple
sources, including FDA regulations, to piece together that the Affected Murad Products are unsafe
for use in the eye area, and the cases Defendant relies on do "not support the idea that a reasonable
consumer would, for every ingredient in an Affected Murad Product, cross-reference the FDA
regulations for each ingredient and discover that the Unsafe Color Additives are not safe for use
near the eye area."  Dkt. No. 23 at 11-13.[18]

---

[18] *See Dimond v. Darden Restaurants, Inc.,* No. 13 CIV. 5244 (KPF), 2014 WL 3377105, at *8
(S.D.N.Y. July 9, 2014) (rejecting plaintiff's omission claims where the plaintiff could have simply
inquired with the waitstaff of a restaurant about the menu's omitted beverage prices); *Pelman v.
McDonald's Corp.*, 237 F. Supp. 2d 512, 529 (S.D.N.Y. 2003) (rejecting omission claims where
plaintiff failed to plead why omission was deceptive or required).

"A defendant's actions are materially misleading when they are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (2021). This test "applies an objective standard."  *See Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 236 (S.D.N.Y. 2021) (citations omitted).  An omission can be "actionable where it is shown that 'a consumer could not reasonably obtain' the omitted information."  *Kyszenia v. Ricoh USA, Inc.,* 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) (finding that complaints "on a handful of websites" were insufficient to show "that consumers were entirely capable of discovering the information on their own.") (citations omitted).

Although the inquiry into whether a product is materially misleading may be decided as a matter of law, *see Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013), "this inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage."  *Duran*, 450 F. Supp. 3d at 346 (collecting cases); *see also Cooper v. Anheuser-Busch*, *LLC*, 553 F. Supp. 3d 83, 97 (S.D.N.Y. 2021) (noting that "in most cases the question of whether Defendant's labeling would prove misleading to the reasonable consumer is a question of fact that cannot be resolved on a motion to dismiss").

The Court finds that the allegations in the Complaint are sufficient to raise a question of fact as to whether a reasonable consumer would be able to determine, based on publicly available data, that the color additives in the Murad products are unsafe for use in the eye area.  Plaintiffs allege that the FDA regulations that prohibit color additives require a consumer to research the regulation for each specific additive and cross-reference the general FDA regulation that color additives may not be used unless the specific regulation for the color additive permits use in the

eye area.  *See* Dkt. No. 1 at ¶ 29 & n.17 (citing 21 CFR 70.5(a)).[19]  Although the FDA has also published a "quick reference" table for determining which color additives may be used in different types of cosmetics, *see id.* at ¶ 31 & n.18, there is a question of fact as to whether a reasonable consumer could be expected to review the table to determine whether each color additive in the Affected Murad Products is safe to use in the eye area.  Moreover, the safety data sheets referenced in the Complaint, *see id.* at ¶¶ 24-27, allegedly are intended for manufacturers' use rather than consumer use.  *See* Dkt. No. 23 at 12 (Safety data sheets "provide a list of harms listed in coded classifications dealing with the raw ingredient, rather than mixed in with other ingredients like in the Affected Murad Products.") (footnote omitted).

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff DeCoursey's GBL § 349 claim to the extent it is based on a failure to warn or omission.

### D.  Plaintiffs' Unjust Enrichment Claim

Defendant argues that Plaintiffs' unjust enrichment claim is duplicative of Plaintiffs' other claims under "each consumer protection statute and common law tort counts"[20] and should thus be dismissed.  *See* Dkt. No. 18 at 13-14.  In response, Plaintiffs argue that a claim of unjust enrichment can be pled in the alternative, and it would be premature to reject those claims at this stage of the proceedings.  *See* Dkt. No. 23 at 22-23.  The Court agrees with Defendant.

---

[19] Because the Declaration of Gary I. Ishimoto ("Ishimoto Declaration") contains facts not set forth in the Complaint, *see* Dkt. No. 23-1, the Court cannot consider it on a Fed. R. Civ. P. 12(b)(6) motion to dismiss without providing notice and converting the motion to dismiss to a motion for summary judgment.  *See Fairchild-Cathey v. Americu Credit Union*, No. 6:21-cv-01173 (LEK/ML), 2023 WL 198101, at *4 (N.D.N.Y. Jan. 17, 2023).  Therefore, the Court does not consider the Ishimoto Declaration and considers only the allegations in the Complaint to determine the sufficiency of Plaintiff's GBL § 349 claim.

[20] The Court will focus its analysis on whether the unjust enrichment claim is duplicative of Plaintiffs' allegations of violations of GBL §§ 349 and 350 (Counts II and III).

"Unjust enrichment is a quasi-contract claim viable only in the absence of an enforceable agreement between the parties governing the subject matter of the dispute." *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (citation omitted).  Under New York law, to prevail on a claim for unjust enrichment, a plaintiff must establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted).  "While an unjust enrichment claim may be premised on deceptive conduct, 'unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020) (citation omitted).

Several district courts in this Circuit have allowed an unjust enrichment claim to proceed where the parties disputed the enforceability of an alleged contract.  *See, e.g.*, *St. John's Univ.*, 757 F. Supp. 2d at 184-85 ("dismissal of unjust enrichment claims is inappropriate where there is a genuine dispute over the alleged contract") (citations omitted); *see also Rothstein v. Auto Club S.*, No. 15-cv-9391 (LAK) (RLE), 2017 WL 11455316, at *4 (S.D.N.Y. Mar. 16, 2017) (declining to dismiss unjust enrichment claim at the motion to dismiss stage where there was a dispute as to whether a valid contract existed).

Here, however, Plaintiffs have not alleged any dispute over an existing contract.  Further, Plaintiffs rely on Fed. R. Civ. P. 8(d)(2) to argue that they can plead unjust enrichment as an alternative theory of recovery.[21]  *See* Dkt. No. 23 at 22-23.  Several district courts in this Circuit

---

[21] Fed. R. Civ. P. 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

have found reliance on Fed. R. Civ. P. 8(d) misplaced.  *See, e.g., Goldemberg*, 8 F. Supp. 3d at 483–84 ("Plaintiff … asserts that Rule 8(d) allows him to plead unjust enrichment in the alternative … disregarding the fact that federal courts must defer to state courts as to substantive state common law …. Certainly, if in New York courts the instant claim for unjust enrichment would be unavailable—as here, where Plaintiff simply restates elements of other claims—it must equally be unavailable in the Federal courts.") (internal citations omitted); *see also Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 38 (N.D.N.Y. 2022) (rejecting plaintiff's argument that at the motion to dismiss stage of the lawsuit, and pursuant to Fed. R. Civ. P. 8(d), he may plead an unjust enrichment claim in the alternative).

Numerous district courts in this Circuit have dismissed an unjust enrichment claim where the plaintiff alleged facts that were duplicative of an alleged violation of GBL §§ 349 and 350. *See, e.g., Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) ("Because plaintiff's unjust enrichment claim under New York law is based on the same allegations as her claims of violations of GBL §§ 349 and 350 and breach of express warranty under New York law, and because plaintiff has not shown how her unjust enrichment claim differs from her other New York claims, the Court dismisses plaintiff's unjust enrichment claim as duplicative of her other New York claims."); *Sitt v. Nature's Bounty, Inc.,* No. 15-CV-4199 (MKB), 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing plaintiff's unjust enrichment claim because plaintiff's alleged violations of GBL §§ 349 and 350 and breach of express warranty under New York law were based on the same allegations as those set forth in support of her other New York claims).

Plaintiffs have failed to demonstrate that their unjust enrichment claim is not based on the same allegations as their claims of violations of GBL §§ 349 & 350.  Accordingly, Defendant's motion to dismiss Plaintiffs' unjust enrichment claim (Count VI) is granted.

### E.  Plaintiffs' Affirmative Misrepresentation Claim

Defendant, relying on *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226 (S.D.N.Y. 2020), argues that Plaintiffs have failed to allege a plausible affirmative misrepresentation claim, except with respect to the Retinol Youth Eye Serum, because Plaintiffs can only allege an affirmative misrepresentation based on statements and images Plaintiffs allege that they viewed prior to their purchase of the Affected Murad Products.  *See* Dkt. No.18 at 18-19; *see also Lugones*, 440 F. Supp. 3d at 240 (finding that the plaintiffs' claims can only be based on representations plaintiffs allege they have "seen before purchasing" the product).  Defendant contends that Plaintiffs only allege they reviewed the "accompany[ing] labels and disclosures," which do not affirmatively suggest that the Affected Murad Products (aside from the Retinol Youth Eye Serum) can be used in or around the eye prior to their purchases, and not the websites, videos, or other marketing materials which Plaintiffs allege direct customers to use the Affected Murad Products in the eye area.  *Id.* (citing Dkt. No. 1 at ¶¶ 15-16, 43-50).

In response, Plaintiffs argue that they have standing under New York law to assert claims for products they have not purchased and advertisements they have not viewed, because the advertising associated with the products raises the "same set of concerns."  *See* Dkt. No. 23 at 16-18.  According to Plaintiffs, the Affected Murad Products each contain at least one Unsafe Color Additive, Defendant failed to warn consumers that these products "should not be used in the eye area," and the products are "customarily and ordinarily used near the eye area."  *Id.* (citing Dkt. No. 1).  Plaintiffs further assert that Defendant "utilized the same marketing strategy" for the

Affected Murad Products by directing consumers to use the products near the eye area and note that Plaintiffs "seek the same relief for purchasers of all of the products." *Id.* (citing Dkt. No. 1 at ¶¶ 13, 43-50).[22]   Plaintiffs also point out that Defendant only cites to *Lugones*, and no other supporting case law, in support of its argument that Plaintiffs must allege that they viewed the misleading advertisement, and that *Lugones* is distinguishable because it only relied on one statement which was shown exclusively online.  *See* Dkt. No 18 at 18-19 (citing *Lugones*, 440 F. Supp. 3d at 240).

The Court finds that a complaint does not need to explicitly state that Plaintiffs viewed the misleading advertisement to state a claim under GBL §§ 349 & 350.[23]   In *Fishon*, the court explained:

> The conclusion that a plaintiff need not state explicitly in her complaint that she saw the misleading advertisement is consistent with *Twombly/Iqbal* and the Second Circuit's holding in *Pelman ex rel. Pelman v. McDonald's Corp.*, that Section 349 claims are subject only to the bare-bones notice-pleading requirements of Rule 8(a) and not the pleading-with-particularity requirements of Rule 9(b).  Reliance is not an element of a private cause of action under either statute … While an allegation that the plaintiff saw the misleading advertisement is sufficient to plead the 'by reason of' requirement, it is not necessary.  The manner in which the plaintiff came to rely upon the deceptive act—and whether it can be proved—is a further issue of proof and not something that needs to be pleaded in detail for a complaint to proceed ... [T]he same conclusion applies to claims under Section 350.

2020 WL 6564755, at *9 (internal quotation marks and citations omitted).  New York courts have also held that reliance is not required to state a GBL §§ 349 or 350 claim.  *See, e.g., Stutman v.*

---

[22] The Court will not address Plaintiffs' argument requesting that the Court defer consideration of Article III standing with respect to unpurchased products until the class certification stage, *see* Dkt. No. 23 at 19, because, as Defendant notes in its Reply, Defendant is arguing that "Plaintiffs, regardless of standing … cannot pursue affirmative misrepresentation claims for products other than the Retinol Youth Eye Serum."  *See* Dkt. No. 24 at 9 n.2.

[23] While the Court interprets Defendant's argument as to Plaintiffs' plausible affirmative misrepresentation claim as applying to each of Plaintiffs' claims, *see* Dkt. No. 18 at 25, the Court will only analyze Defendant's argument as to the GBL §§ 349 and 350 claims, the only remaining claims in the lawsuit.

*Chemical Bank*, 95 N.Y.2d 24, 29 (2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim."); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012) (finding it was an error to impose "a reliance requirement on General Business Law §§ 349 and 350 claims").

Accordingly, the Defendant's motion to dismiss Plaintiffs' GBL §§ 349 and 350 claims to the extent they relate to products other than the Retinol Youth Eye Serum, is denied.

### F.  Standing to Seek Injunctive Relief

Defendant has moved to dismiss Plaintiffs' request for injunctive relief pursuant to Fed. R. Civ. P. 12(b)(1).  *See* Dkt. No. 18 at 1.  Defendant argues that Plaintiffs lack standing to seek injunctive relief because the Complaint does not allege a "likelihood of future and continuing harm," and the "reasonable inference" of the allegations in the Complaint[24] is that Plaintiffs do not intend to purchase the Affected Murad Products in the future.  *See id.* at 19-20.

Plaintiffs have the burden of demonstrating standing.  *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  Standing under Article III requires a showing that "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Oneida Indian Nation v. U.S. Dep't of the Interior*, 336 F. Supp. 3d 37, 44 (N.D.N.Y. 2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  A plaintiff seeking to represent a

---

[24] Defendant draws its "reasonable inference" from Plaintiffs' allegations that they "would not have purchased the Affected Murad Products had [they] known that the products contained unsafe color additives," their "extensive allegations concerning their interpretation of the effect of color additives in cosmetics intended to be used in the eye area and the research on which their conclusions are based," and allegations that Plaintiffs "believe the products are 'worthless.'" *See* Dkt. No. 1 at ¶¶ 15-16, 23-37, 85.

proposed class must personally have standing.  *See Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 239 (2d Cir. 2016) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)).

When seeking prospective injunctive relief, to satisfy the injury requirement "a plaintiff cannot rely on past injury alone." *Buonasera v. Honest Co., Inc*., 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016) (citation omitted); *Elkind v. Revlon Consumer Prod. Corp*., No. 14-CV-2484 (JS) (AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of future or continuing harm.") (citations omitted).  Mere "allegations of possible future injury are not sufficient"; the "injury must be certainly impending." *Izquierdo*, 450 F. Supp. 3d at 460 (*quoting Daniel v. Tootsie Roll Indus*., *LLC*, No. 17 CIV. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018)).

Plaintiffs do not assert that they would purchase the Affected Murad Products in the future; instead, they argue that they do not need to plead they would buy the products again in the future to have standing to pursue injunctive relief.  *See* Dkt. No. 23 at 19-20.  Plaintiffs rely, in part, on *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015), which found that plaintiffs had standing to seek injunctive relief under New York consumer protection statutes even though they did not allege an intent to purchase the product at issue in the future.  *See* Dkt. No. 23 at 20.

Plaintiffs' reliance on *Belfiore* is misplaced and the Court rejects the argument that Plaintiffs do not need to express an intention to buy a product again in the future to have standing to seek prospective injunctive relief.  *See, e.g., Pres. at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*, No. 17-cv-7050 (JFB) (AYS), 2019 WL 337093, at *8 (E.D.N.Y. Jan. 28, 2019) ("As an initial matter the … *Belfiore* holding, that plaintiffs had standing to pursue injunctive relief for products they did not intend to purchase again, has been rejected in several

district court decisions"); *see also Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F.

Supp. 3d 285, 296 n.65 (S.D.N.Y. 2015) (finding *Belfiore* to be "irreconcilable with Article III's

firm injury-in-fact requirement").  Plaintiffs do not have standing to pursue injunctive relief if they

do not indicate that they intend to buy the product again.  *See Lugones,* 440 F. Supp. 3d at 239

(The "Second Circuit has held that where a plaintiff has failed to allege that he intends to use the

offending product in the future, there is no likelihood of future harm.").

In their Opposition, Plaintiffs provide Declarations from named Plaintiffs DeCoursey and

Sit seeking to remedy this alleged pleading deficiency.  Plaintiff DeCoursey's and Plaintiff Sit's

Declarations state:

> I would purchase Murad products, including Affected Murad Products, again, if
> they were actually safe for use in the manner in which they are directed, re-labeled
> with directed use or uses that are safe for consumers, or if the Products were
> reformulated to remove the offending ingredient or ingredients. In other words, I
> would purchase Murad Affected Products again if they were sold as advertised and
> I could rely on the labels in the future.

*See* Dkt. Nos. 23-2 at ¶ 4; 23-3 at ¶ 4.  Because standing is a jurisdictional requirement, *see*

*Duchimaza v. Niagara Bottling, LLC*, No. 21 CIV. 6434 (PAE), 2022 WL 3139898, at *4

(S.D.N.Y. Aug. 5, 2022), the Court can and will consider Plaintiffs' Declarations.  *See Luckett v.*

*Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002) (the court is permitted to consider matters outside the

pleadings where jurisdictional facts are disputed).

Plaintiffs DeCoursey and Sit state only that they would purchase the Affected Murad

Products in the future under certain conditions, including that the products are safe for use in the

manner directed.  *See* Dkt. Nos. 23-2 at ¶ 4; 23-3 at ¶ 4.  The law in this Circuit, however, is

unsettled as to whether plaintiffs "seeking injunctive relief for consumer deception will be able to

demonstrate standing where, as here, Plaintiffs allege they would buy the products in the future"

if the Unsafe Color Additives were removed or the products were re-labeled.  *Mancuso v. RFA*

*Brands, LLC*, No. 18-CV-6807L, 2020 WL 1846982, at *5 (W.D.N.Y. Apr. 13, 2020) (internal citations and quotations omitted).  Some courts have found that plaintiffs fail to establish standing where they make conditional promises to purchase products in the future.  *See Atik v. Welch Foods, Inc.*, No. 15-cv-5405 (MKB) (VMS), 2016 WL 5678474, at *6 (E.D.N.Y. Sept. 30, 2016) (finding plaintiffs did not have standing where they alleged that "they would resume purchasing the Products in the future but only if the representations on the Products' labels were 'truthful and non-deceptive'") (quoting *Atik v. Welch Foods, Inc.*, No. 15-cv-5405, 2015 WL 5626357, at ¶¶ 16, 19 (E.D.N.Y. Sep. 18, 2015)); *Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17-CV-04570 (LAK) (KHP), 2017 WL 3727230, at *6 (S.D.N.Y. Aug. 11, 2017) ("[Plaintiff] stated in her sworn Declaration that she will not make further DVD purchases from [Defendant] until it changes its website.  This admission deprives [Plaintiff] of standing because she has stated she intends to avoid future harm and concedes that her own conduct can prevent future harm.") (internal citation omitted).

Other courts, including in this Circuit, have concluded that plaintiffs have standing to seek prospective injunctive relief when they assert that they will purchase a product in the future if it is altered, as Plaintiffs have alleged here.  *See Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401 (NSR), 2020 WL 2766050, at *5 (S.D.N.Y. May 27, 2020) (holding that the plaintiff had standing where she alleged that she would buy the product at issue again "if she were assured that any purported defects were identified and eliminated"); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337-38 (E.D.N.Y. 2018) (holding that plaintiffs would have standing if they pled a future desire to buy defendant's product); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (holding that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling" because "the threat of future harm may be the consumer's

plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").

The Court finds the reasoning of the *Morales*, *Campbell*, and *Davidson* cases persuasive. The Second Circuit's decision in *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016), is not to the contrary. In that case, the district court concluded that the plaintiff lacked standing to seek an injunction for failure to establish he was in danger of being wronged again, and the Second Circuit affirmed that conclusion. *Id.* at 238. Critical to the Second Circuit's reasoning was that the defendant "ha[d] ceased selling [the offending product] on its website," and plaintiff "ha[d] failed to allege he intend[ed] to use Amazon in the future to buy any products." *Id.* Here, Defendant continues to sell the Affected Murad Products, and Plaintiffs' Declarations state that they would purchase the Affected Murad Products again if they were safe for use in the manner directed or re-labeled. *See* Dkt. Nos. 23-2 at ¶ 4; 23-3 at ¶ 4.

Accordingly, the Court finds that Plaintiffs have sufficiently alleged future injury and therefore have standing to seek injunctive relief.

## V.    CONCLUSION

Accordingly, the court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 17) is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendant's motion to dismiss for lack of personal jurisdiction is **GRANTED** as it pertains to Plaintiff Sit and the Missouri Subclass and Plaintiff DeCoursey's claims as to purchases she made in Pennsylvania; and is **DENIED** as it pertains to the nationwide class; and the Court further

**ORDERS** that the following claims are **DISMISSED**:

(a) Breach of implied warranty (Count I);

(b)  Violation of the Missouri Merchandising Practices Act (Count IV);

(c)  Negligence – failure to warn (Count V);

(d)  Unjust enrichment (Count VI).

**ORDERS** that the following claims **SURVIVE:**

(a)  Violation of New York General Business Law ("GBL") § 349 (Count II); and

(b)  Violation of GBL § 350 (Count III); and the Court further

**ORDERS** that Defendant's motion to dismiss Plaintiffs' request for injunctive relief is **DENIED;** and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>May 16, 2023</u>
       Albany, New York

Anne M. Nardacci
U.S. District Judge